No. 101,521

STATE OF KANSAS, *Appellee*, v. SHAUN EUGENE SPAGNOLA, *Appellant*.

(289 P.3d 68)

Opinion filed December 7, 2012.

*Meryl Carver-Allmond,* of Kansas Appellate Defender Office, argued the cause and was on the briefs for appellant.

*Jodi E. Litfin,* assistant district attorney, argued the cause, and *Natalie Chalmers,* assistant district attorney, *Chadwick J. Taylor,* district attorney, *Steve Six,* former attorney general, and *Derek Schmidt,* attorney general, were on the briefs for appellee.

The opinion of the court was delivered by

ROSEN, J.: On review of an unpublished decision of the Court of Appeals, Shaun Eugene Spagnola seeks reversal of a conviction of possession of methamphetamine, arguing that the district court admitted evidence derived from an unlawful search of his pockets following a traffic stop. We conclude that the search was not consensual under the circumstances and violated the Fourth Amendment to the United States Constitution protection against unreasonable searches.

On June 3, 2007, Officer Aaron Jones of the Topeka Police Department observed a car drive through an intersection without stopping for a stop sign. Jones activated the lights of his patrol car and signaled the car to pull over to the side of the road. As the car pulled over, it rolled onto the curb and into a grassy area next to the curb and then back off of the curb before coming to a complete stop. Jones saw the driver reach down toward his right side as he pulled over, as if reaching into a pocket or the car console. Jones walked over to the car, and Spagnola, who was driving, presented his driver's license.

Jones returned to his patrol car and, concerned that Spagnola might be armed, requested backup assistance. After the backup officer arrived, Jones returned to Spagnola's car and asked him to step out of the car. As Spagnola was getting out of the car, Jones asked him whether he had anything illegal in his possession. Spagnola replied that he was working on a computer monitor for a friend and he thought the monitor might have been stolen. Jones

saw a small clip-on knife protruding from one of Spagnola's pant pockets, and he removed the knife and then asked him whether he had anything illegal on his person. Spagnola said, "Other than a knife, no." Jones informed him that the knife was not illegal and inquired about drugs, knives, guns, needles, "or anything like that."

After Spagnola said that he did not have any illegal items on his person, Jones asked, "Is it okay if I search your pockets?" Spagnola said, yes. Jones then asked Spagnola to turn around, place his hands behind his back, and interlace his fingers. Jones again asked for permission to search his pockets, and Spagnola again consented.

Spagnola was wearing cargo shorts with numerous pockets. In a zipper pocket behind the right cargo pocket Jones found two baggies of what appeared to be methamphetamine and a third baggie containing what appeared to be methamphetamine residue. Jones read Spagnola his *Miranda* rights and put him in handcuffs. The contents of the baggies were subsequently identified as methamphetamine.

The State filed a complaint charging Spagnola with one count of possession of methamphetamine and one count of failure to stop at a stop sign. Spagnola filed a motion to suppress evidence seized from his person and all statements that he made after the evidence was seized. The district court conducted a hearing on the motion to suppress and denied the motion. Immediately before trial, Spagnola filed a renewed and more extensive motion to suppress, which the district court, following oral argument, also denied.

Following a bench trial, the judge found Spagnola guilty of both counts. The court sentenced Spagnola to a fine of $60 for failing to stop at a stop sign and a suspended sentence of 11 months' imprisonment with a supervised postrelease period of 12 months for the possession of methamphetamine conviction. Spagnola timely appealed to the Court of Appeals, which held that he had failed to preserve the suppression issue for appellate review. The Court of Appeals went on to note in dicta that even if the issue had been preserved, there was "ample basis" for denying the motions to suppress, *State v. Spagnola*, No. 101,521, 2010 WL 597004, at *2 (Kan. App. 2010) (unpublished opinion). This court granted review under K.S.A. 20-3018(b).

*Preservation*

Two witnesses testified at trial: Brad Crow, a forensic chemist for the KBI, and Aaron Jones, the police officer who searched and arrested Spagnola. Their testimony was presented without objection, but Spagnola objected to the introduction of Crow's lab report and the introduction of the three plastic baggies "on the grounds of our motion to suppress." The objections were overruled. The majority of the Court of Appeals panel found that Spagnola asserted his objections too late in the course of the witnesses' testimony to allow appellate review.

The general rule is that the failure of a party to make a specific contemporaneous objection to the admission of evidence or testimony at trial precludes review of the admissibility of that evidence or testimony on appeal. K.S.A. 60-404; see *State v. Gaona*, 293 Kan. 930, 956, 270 P.3d 1165 (2012).

In *State v. King*, 288 Kan. 333, 204 P.3d 585 (2009), this court reiterated its commitment to the contemporaneous objection requirement. The court noted that the purpose of the requirement is to give the trial court the opportunity to conduct the trial without exposure to tainted evidence, thus avoiding possible reversal, and the rule is also necessary to ensure that litigation may be brought to a conclusion. *King*, 288 Kan. at 342.

In *State v. Bogguess*, 293 Kan. 743, 747, 268 P.3d 481 (2012), however, this court relaxed the objection requirement in the specific context of a bench trial on stipulated facts when the same judge presides over the hearing on the motion to suppress and conducts the trial:

"When a bench trial consists solely of stipulated facts, there is no opportunity for the defendant to make a contemporaneous objection at trial to the admission of specific evidence. And *when the bench trial is conducted by the same judge who presided over the hearing on the motion to suppress, there is no reason to rehash the same arguments when no additional evidence has been presented. The lack of a contemporaneous objection does not bar our review under these circumstances*." (Emphasis added.)

In *Bogguess*, 293 Kan. at 747, the court cited with approval *State v. Parson*, 226 Kan. 491, 493-94, 601 P.2d 680 (1979). In *Parson*, the court noted that the contemporaneous objection rule is relaxed

to fit particular trial situations, including trials to the court rather than to a jury. Because the trial court and opposing counsel were informed of the appellant's objections to the evidence in his argument on the motion for judgment of acquittal at the close of the State's case, the court and the State had sufficient notice of the specific objections prior to the trial court's decision. *Parson,* 226 Kan. at 493-94.

The *Parson* court in turn cited *State v. Gordon,* 219 Kan. 643, 652, 549 P.2d 886 (1976), where this court held:

"Ordinarily, failure to make timely, specific objection to the admission of evidence will bar consideration of the admissibility question on appellate review. [Citations omitted.] Here, the appellant's objection was not 'timely' in the strict sense, but there is no doubt the district court was apprised of the issue before it rendered its decision . . . . What transpired is consistent with the rationale underlying the contemporaneous objection rule—*i.e.*[,] objecting to admissibility and stating the grounds therefor permits the court to preclude improper evidence from affecting the decision. This was a trial by the court; no jurors had been swayed by the improper evidence. The court had not rendered its decision when the issue was raised, and we think under the circumstances of this case the spirit if not the letter of the contemporaneous objection rule was satisfied."

In the present case, the trial court explicitly stated it understood that any future objections would be based on its ruling on the suppression issue and that the issue was clear. Although the court directed Spagnola to make specific contemporaneous objections, it did not repeat that requirement when it denied Spagnola's second suppression motion immediately before trial.

The same judge twice ruled on the suppression issue and then conducted the trial. As Judge Malone pointed out in his Court of Appeals dissenting opinion in *Spagnola,* 2010 WL 597004, at *2, the purpose of the contemporaneous objection rule was fulfilled without necessitating repeated interruptions of the trial. Furthermore, Spagnola interposed timely objections when the State sought to introduce physical evidence at the trial. For these reasons, we deem the suppression issue adequately preserved for appellate review.

## The Constitutionality of the Search

In appeals of suppression issues, this court reviews the factual underpinnings of a district court's decision for substantial competent evidence and the ultimate legal conclusion drawn from those facts de novo. The ultimate determination of the suppression of evidence is a legal question requiring independent appellate review. The State bears the burden to demonstrate that a challenged search or seizure was lawful. When the parties do not dispute the material facts, the suppression question is solely one of law. *State v. Thomas*, 291 Kan. 676, 682, 246 P.3d 678 (2011).

The trial court held that a chain of events, starting with Jones' traffic stop and suspicion that Spagnola was intoxicated, led to a proper stop, the detention of Spagnola, and the request for consent to search his pockets. The Court of Appeals agreed. *Spagnola*, 2010 WL 597004, at *2.

The Court of Appeals did not address, however, whether the search as carried out was reasonable in scope and whether Spagnola's consent to the search was given freely and voluntarily. We consider these factors and conclude that Jones exceeded the reasonableness that the United States Constitution requires.

There is little question that Jones had a legitimate reason to make a traffic stop: he witnessed a violation of the traffic laws. Under normal circumstances, a law enforcement officer may request license and registration, run a computer check, and issue a citation. Once the driver has produced a valid license and proof has been confirmed that he or she is entitled to operate the vehicle, the driver must be allowed to proceed on his or her way without being subject to further delay by police for additional questioning. *State v. Morlock*, 289 Kan. 980, 986, 218 P.3d 801 (2009). The detaining of a driver justified solely for the purpose of issuing a ticket to the driver can become unlawful if it is prolonged beyond the time reasonably required to complete that lawful objective. *Illinois v. Caballes*, 543 U.S. 405, 407, 125 S. Ct. 834, 160 L. Ed. 2d 842 (2005).

In the present case, however, Jones became aware of information that reasonably led him to prolong the stop. He saw Spagnola

drive up over the curb, suggesting possible impairment. He saw Spagnola reach down in the direction of his right side or the car console, suggesting the presence of a weapon and danger to law enforcement. When asked about why he was reaching down, Spagnola said he was looking for his cigarettes; he then changed his answer and said he was looking for his registration papers. These factors provided Jones with a legitimate concern that Spagnola might be armed or that he might be impaired. It was reasonable for Jones to wait for a backup officer before he returned to the car to write a ticket because of the objectively real threat to his safety.

Once a backup officer arrived, Jones asked Spagnola to step out of the car. A police officer may ask the driver to get out of a vehicle when the vehicle has been stopped for a traffic violation. *Pennsylvania v. Mimms*, 434 U.S. 106, 111, 98 S. Ct. 330, 54 L. Ed. 2d 331 (1977). After Spagnola stepped out of the car, he told Jones and the backup officer that stolen computer equipment might be in the car. At this point, Jones was still involved in the original traffic stop, and he had a reasonable basis to ask further questions relating both to possible impairment and possible stolen goods. He also had a legitimate concern about the possibility of weapons on Spagnola's person. A police officer may extend the length of the traffic stop for questioning beyond the initial purpose of the traffic stop if the officer has an objectively reasonable and articulable suspicion that illegal activity has occurred or if the driver voluntarily consents to further questioning. *State v. Coleman*, 292 Kan. 813, 816-17, 257 P.3d 320 (2011); *State v. Reason*, 263 Kan. 405, 410, 951 P.2d 538 (1997).

What the police officer did next was not reasonable under the Fourth Amendment to the United States Constitution. This is because the lawfulness of a defendant's seizure is a question different from whether the ensuing search was voluntary. See, *e.g.*, *United States v. Valenzuela*, 494 F.3d 886, 891 (10th Cir.), *cert. denied* 552 U.S. 1032 (2007).

The Fourth Amendment protects "against unreasonable searches and seizures." Reasonableness is the touchstone of the Fourth Amendment. *Ohio v. Robinette*, 519 U.S. 33, 39, 117 S. Ct. 417, 136 L. Ed. 2d 347 (1996). The reasonableness of a police officer's

conduct is viewed in terms as understood by those versed in the field of law enforcement. *State v. Walker*, 292 Kan. 1, 8, 251 P.3d 618 (2011).

Although the initial stop was predicated on a traffic violation, the detention continued less out of a concern about impaired driving and increasingly out of a concern about stolen property. The possible stolen property was in the backseat of Spagnola's car, not on his person. The only justification for the pocket search was for Jones' safety.

Under the United States Constitution, Jones was allowed to conduct a pat-down search of Spagnola's clothing. In the course of an investigatory detention, a police officer may conduct a pat-down search for weapons that might pose a danger to the officer. *Knowles v. Iowa*, 525 U.S. 113, 118-19, 119 S. Ct. 484, 142 L. Ed. 2d 492 (1998); *Terry v. Ohio*, 392 U.S. 1, 27, 88 S. Ct. 1868, 20 L. Ed. 2d 889 (1968); see K.S.A. 22-2402(2). In order to justify a pat-down search of a driver or a passenger during a traffic stop, the police officer must harbor reasonable suspicion that the person subjected to the search is armed and dangerous. *Arizona v. Johnson*, 555 U.S. 323, 327, 129 S. Ct. 781, 172 L. Ed. 2d 694 (2009). A warrantless *Terry* stop is permissible under the Fourth Amendment because of its limited nature and because of the officer's narrow scope of authority. *Michigan v. Summers*, 452 U.S. 692, 698, 700 n.11, 101 S. Ct. 2587, 69 L. Ed. 2d 340 (1981).

There was no reason, however, for Jones to expand the pat-down search. Such a search exceeds the narrowly crafted exception that *Terry* created for the purpose of police protection.

During a *Terry* stop, a police officer may conduct a pat-down search only when nothing in the initial stages of the encounter dispels his or her reasonable fear for his or her own or others' safety. In such an instance, the officer may conduct a "carefully limited search *of the outer clothing*" to determine whether the individual has weapons that might be used against the officer. (Emphasis added.) *Terry*, 392 U.S. at 30.

"In the name of investigating a person who is no more than suspected of criminal activity, the police may not carry out a full search of the person or of his automobile or other effects. Nor may the police seek to verify their suspicions by

means that approach the conditions of arrest." *Florida v. Royer*, 460 U.S. 491, 499, 103 S. Ct. 1319, 75 L. Ed. 2d 229 (1983).

The protections of the Fourth Amendment are not diluted when legitimate law enforcement interests justify a warrantless search; the search must still be limited *in scope* to whatever is justified by the exception to the constitutional requirement of a warrant. *Royer*, 460 U.S. at 500. "[T]he investigative methods employed should be the *least intrusive means reasonably available* to verify or dispel the officer's suspicion in a short period of time." (Emphasis added.) *Royer*, 460 U.S. at 500.

It is clear that the pocket search exceeded the scope of the constitutionally permissible action narrowly tailored to protect law enforcement. It was not the least intrusive means available to dispel the officer's suspicion of a threat in the short period of time that Spagnola was detained.

As the courts below noted, however, Spagnola, who was standing outside of his vehicle in the authoritative presence of two armed police officers, told Jones that he had permission to search his pockets. In order for a consent to search to be valid, two conditions must be met: (1) There must be clear and positive testimony that consent was unequivocal, specific, and freely given; and (2) the consent must have been given without duress or coercion, express or implied. *State v. Ransom*, 289 Kan. 373, Syl. ¶ 4, 212 P.3d 203 (2009).

Whether a consent was freely given is determined by the totality of the circumstances. *United States v. Drayton*, 536 U.S. 194, 207, 122 S. Ct. 2105, 153 L. Ed. 2d 242 (2002); *Robinette*, 519 U.S. at 39.

The appropriate inquiry here is whether a reasonable person would feel free to decline the officer's requests or otherwise terminate the encounter. See *Florida v. Bostick*, 501 U.S. 429, 436, 111 S. Ct. 2382, 115 L. Ed. 2d 389 (1991).

" 'Consent' that is the product of official intimidation or harassment is not consent at all. Citizens do not forfeit their constitutional rights when they are coerced to comply with a request that they would prefer to refuse." *Bostick*, 501 U.S. at 438.

"[T]he Fourth and Fourteenth Amendments require that a consent not be coerced, by explicit or implicit means, by implied threat or covert force. For, no matter how subtly the coercion was applied, the resulting 'consent' would be no more than a pretext for the unjustified police intrusion against which the Fourth Amendment is directed. . . .

". . . In examining all the surrounding circumstances to determine if in fact the consent to search was coerced, account must be taken of subtly coercive police questions, as well as the possibly vulnerable subjective state of the person who consents." *Schneckloth*, 412 U.S. at 228-29.

This court has developed a nonexclusive list of objective factors to help determine whether a citizen's encounter with police is voluntary or an investigatory detention. This list includes the presence of more than one police officer, the display of a weapon, physical contact by the police officer, use of a commanding tone of voice, activation of sirens or flashers, a command to halt or to approach, and an attempt to control the ability to flee. *Walker*, 292 Kan. at 6-7 (quoting *State v. McGinnis*, 290 Kan. 547, 552, 233 P.3d 246 [2010]). This court has also noted that the presence of more than one police officer may strongly suggest "a coercive atmosphere." See *Thomas*, 291 Kan. at 686.

The seizure resulting from a traffic stop is more akin to an investigatory detention than an arrest. *State v. Smith*, 286 Kan. 402, 406, 184 P.3d 890, *cert. denied* 555 U.S. 1062 (2008). Once an involuntary encounter has occurred, the same factors that go into determining whether an encounter is voluntary may reasonably apply to whether the consent for a search was voluntary.

Spagnola was standing outside of his car in the presence of more than one police officer, one of whom had arrived as backup support. When Spagnola gave his second permission for the search, he was standing with his back to the officers, with his hands behind his back and his fingers interlaced. This was not a posture or an environment in which it can be said that consent was voluntarily given free from coercion.

The pocket search exceeded the scope of the "carefully limited" exception to the warrant requirement set out in *Terry* and could serve no purpose except to open up a hunt for evidence unrelated to the traffic stop and the detention. Spagnola's consent was given in a highly coercive atmosphere. For these reasons, we conclude

that the search violated the constitutional protection against unreasonable searches, and the evidence obtained from that search should have been suppressed.

As Judge Malone noted in his dissenting opinion in the Court of Appeals, this is not a new principle of law. This court has already held in *Smith*, 286 Kan. at 419, that even though there is a consent to a search, a detention that exceeds the scope of or is unrelated to the stop violates the Fourth Amendment.

Judgment of the Court of Appeals affirming the district court is reversed. Judgment of the district court is reversed and remanded with directions.