NOT DESIGNATED FOR PUBLICATION

No. 112,302

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

GUILLERMO FUERO-MENDOZA,
*Appellant*.


MEMORANDUM OPINION

Appeal from Lyon District Court; MERLIN G. WHEELER, judge. Opinion filed January 8, 2016. Affirmed.

*Reid T. Nelson*, of Capital and Conflicts Appeals Office, for appellant.

*Jonathon L. Noble*, assistant county attorney, *Marc Goodman*, county attorney, and *Derek Schmidt*, attorney general, for appellee.

Before ATCHESON, P.J., BUSER and GARDNER, JJ.

BUSER, J.: Guillermo Fuero-Mendoza was convicted of possession of methamphetamine and possession of drug paraphernalia. In this appeal, he contends the district court erred in denying his motion to suppress the incriminating contraband discovered by an Emporia police officer after Fuero-Mendoza voluntarily consented to the search of his backpack. In particular, he argues that despite his voluntary consent, the officer's search was beyond the scope of the detention and, therefore, in violation of the Fourth Amendment to the United States Constitution. Finding no error in the officer's search of the backpack and seizure of the contraband, we affirm the convictions.

1

FACTUAL AND PROCEDURAL BACKGROUND

On November 6, 2013, as a consequence of the search of Fuero-Mendoza's backpack and seizure of contraband, the State charged him with possession of methamphetamine (K.S.A. 2014 Supp. 21-5706[a],[c][1]) and possession of drug paraphernalia (K.S.A. 2014 Supp. 21-5709[b][2],[e][3]).

Prior to trial, Fuero-Mendoza filed a motion to suppress all evidence seized from his backpack. In the motion, he made several assertions. In particular, Fuero-Mendoza alleged Officer Jeremiah Bouthillier "extended the duration of the detention beyond what was reasonable." He also claimed "he did not inform the police officer that he had permission to search his bag or in the alternative, that such consent was not freely, knowingly, and voluntarily obtained." Additionally, Fuero-Mendoza stated that Officer Bouthillier "lacked reasonable suspicion to detain the Defendant and request his consent to search the bag" because during the encounter the only suspicious behavior noted by the officer was that Fuero-Mendoza glanced several times at his backpack. Fuero-Mendoza also asserted the search was unnecessary because the officer could have moved him away from the bag or placed him in handcuffs until the encounter was ended. Finally, Fuero-Mendoza stated, in the alternative, that his consent to the search was invalid because he was never advised of his *Miranda* rights prior to his arrest. See *Miranda v. Arizona*, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966).

At the beginning of the hearing on the motion to suppress, however, counsel for Fuero-Mendoza advised that he "wasn't going to contest that there was reasonable suspicion to initiate the stop, that the description given of the suspect was sufficient, sufficiently definitive and occurred within a close enough time that that's not going to be an issue."

2

During the hearing, the district court heard testimony from Officer Bouthillier and Fuero-Mendoza. Officer Bouthillier testified he was on duty on November 5, 2013, in his patrol vehicle when he stopped Fuero-Mendoza, who was wearing a backpack and riding a bicycle. According to the officer, "The reason why I initiated a stop was, I was given a description of a suspect leaving the scene of a crime, wearing blue jeans, a dark-colored hoodie, a blue backpack, while riding a bicycle."

The police dispatcher first notified Officer Bouthillier of the incident and suspect description at 1:49 p.m. Initially, the officer was advised the suspect was involved in "a family fight," and the "reporting party was barricaded in her house because she was afraid of Mr. Mendoza."

Officer Bouthillier testified that he stopped Fuero-Mendoza about a minute after receiving the initial dispatch, or about 1:50 p.m. At the time of the bicycle stop, the officer could see in the distance, 1213 Sundown Circle, the residence where the incident reportedly occurred.

Upon being stopped by Officer Bouthillier, Fuero-Mendoza placed the backpack he had been wearing on the ground next to his feet. The officer asked Fuero-Mendoza if he had been at 1213 Sundown Circle. Fuero-Mendoza responded that he had been there, and the officer began questioning him about the incident which had just occurred at the residence. In particular, Officer Bouthillier asked Fuero-Mendoza if he had any weapons on him prior to being stopped. Fuero-Mendoza indicated he had a pocket knife which he surrendered to the officer who secured it.

According to Officer Bouthillier, Fuero-Mendoza "seemed a little nervous, . . . a little confused. He was very agitated. . . . Consistently during our interview, he would look at this backpack, look at me in just kind of a jittery manner." The officer estimated that Fuero-Mendoza glanced down at the backpack five or six times. Based on his

3

observations of Fuero-Mendoza's behavior, Officer Bouthillier was concerned about his safety because the back pack possibly contained "guns, knives, anything illegal."

About 8 minutes after stopping Fuero-Mendoza, or about 1:58 p.m., Officer Bouthillier asked the suspect if "I could have consent to search his bag for any of those items." The officer testified that Fuero-Mendoza "first looked at the bag then looked at me, kind of shrugged his shoulders, and then with his left hand, pointed towards the blue backpack and said, "'Yeah. Sure. Go ahead.'"

Upon searching the backpack, Bouthillier located a white, clear pipe that contained some white residue. As a consequence, the officer placed Fuero-Mendoza under arrest and advised him of his *Miranda* rights. In response, Fuero-Mendoza denied the pipe was his and claimed that it belonged to a friend. A later search of the bag located another clear pipe containing white residue. The items seized from the backpack provided the basis for the drug charges.

At the time Officer Bouthillier asked for consent to search, he testified that he did not know the results of Officer Ayer's contact with the reporting party at 1213 Sundown Circle. After discovering the contraband, however, Officer Bouthillier had radio contact with Officer Ayers regarding the incident. Officer Bouthillier later learned that an actual fight had not occurred at the residence.

Fuero-Mendoza testified at the suppression hearing. He indicated he was born in Mexico where he lived for 16 years. Fuero-Mendoza denied that he displayed any nervousness during the encounter with Officer Bouthillier, and he testified that he felt he was free to leave because the officer had no reason to arrest him. Fuero-Mendoza recalled that Officer Bouthillier asked him for permission to search his backpack, but he denied that he gave his consent. He also said he was arrested prior to the search of the backpack and the encounter lasted for more than 30 minutes.

At the conclusion of the evidence, the State argued that Fuero-Mendoza had knowingly and voluntarily consented to the search and asked the district court to deny the motion to suppress. Defense counsel candidly conceded there was reasonable suspicion to stop Fuero-Mendoza "because [the State] wanted to determine whether something may or may not have happened." But the defense complained that "the stop extended the duration of what was necessary." Specifically, Fuero-Mendoza complained that Officer Bouthillier "waited somewhere on the order of about eight minutes before requesting consent to search." Defense counsel also argued that the officer lacked reasonable suspicion to search the backpack or extend the detention. Defense counsel did not contest or even mention the voluntariness of Fuero-Mendoza's consent to the search.

In denying the motion to suppress, the district court made extensive factual findings and legal conclusions from the bench which were later memorialized in a journal entry. The district court found the parties conceded that at the time of the initial stop Officer Bouthillier had reasonable suspicion to make an investigatory stop. The district court also resolved the disputed, contradictory evidence presented at the hearing by finding that "Officer Bouthillier's testimony is more probably true than not true."

With regard to the stop and detention of Fuero-Mendoza, the district court concluded that the officer's questions "were of the nature that would have been usual in the course of an investigatory detention." Moreover, "the time taken beginning with the stop [and] ending with the search of the bag took approximately 8 minutes during which time Officer Bouthillier had no contact from other law enforcement. He had no information that would have made the length of the detention in this instance unreasonable." Finally, the district court found that Fuero-Mendoza "gave unequivocal, specific, and freely given consent to search his backpack."

At trial, defense counsel made a continuing objection to the admission of the contraband, thus preserving the issue for appellate review. A jury found Fuero-Mendoza

5

guilty as charged. The district court granted Fuero-Mendoza's motion for a durational departure and sentenced him to a controlling 15-month term of imprisonment. Fuero-Mendoza timely appeals.

ANALYSIS

Preliminarily, it is necessary to clarify what legal arguments Fuero-Mendoza is actually raising on appeal. First, as he conceded in the district court, Fuero-Mendoza does not challenge the legality of Officer Bouthillier's stop. Moreover, he acknowledges that under *Terry v. Ohio*, 392 U.S. 1, 16-19, 88 S. Ct. 1868, 20 L. Ed. 2d 889 (1968), "the investigating officer was arguably allowed . . . to ask questions related to the disturbance report, but if probable cause did not develop, to then allow Mr. Fuero-Mendoza to leave." The district court noted Fuero-Mendoza's concession and relied upon it in ruling on the suppression motion. As a result, the district court's finding that Officer Bouthillier conducted a proper investigatory stop of Fuero-Mendoza based on reasonable suspicion of criminal conduct will not be reviewed on appeal. See *State v. Kelly*, 298 Kan. 965, 971, 318 P.3d 987 (2014) (Generally, issues not raised before the trial court may not be raised on appeal.); *State v. Boleyn*, 297 Kan. 610, 633, 303 P.3d 680 (2013) (An issue not briefed by the appellant is deemed waived and abandoned.).

Second, as noted by the State, on appeal Fuero-Mendoza also does not contest the State's central point that he freely and knowingly consented to the officer's request to search his backpack. The district court determined the consent was unequivocal, specific, and freely given. Accordingly, we will not review the district court's legal conclusion that Fuero-Mendoza's consent to the search of the backpack was constitutionally valid. See 297 Kan. at 633.

Next, we identify the issue that Fuero-Mendoza has raised on appeal: "The request for consent to search Mr. Fuero-Mendoza' backpack had nothing to do with the

6

investigatory stop, and so was beyond the scope of the stop; therefore the contents should have been suppressed."

Our standard of review regarding district court rulings on motions to suppress evidence is longstanding: An appellate court uses a bifurcated standard to review a district court's decision on a motion to suppress. Without reweighing evidence, the appellate court reviews the district court's findings to determine whether they are supported by substantial competent evidence. *State v. Sanchez-Loredo*, 294 Kan. 50, 54, 272 P.3d 34 (2012). Substantial evidence refers to legal and relevant evidence that a reasonable person could accept as being adequate to support a conclusion. *State v. May*, 293 Kan. 858, 862, 269 P.3d 1260 (2012). The district court's ultimate legal conclusion is reviewed de novo. *Sanchez-Loredo*, 294 Kan. at 54.

Both the Fourth Amendment of the United States Constitution and § 15 of the Kansas Constitution Bill of Rights grant individuals the right to be free from unreasonable searches and seizures of their person and property. *State v. Thompson*, 284 Kan. 763, 772, 166 P.3d 1015 (2007). The State carries the burden to prove that a search or seizure was lawful. *State v. McGinnis*, 290 Kan. 547, 551, 233 P.3d 246 (2010). A warrantless search is per se unreasonable unless one of the specially established exceptions applies. *Sanchez-Loredo*, 294 Kan. at 55. Here, the State relied on consent as the exception providing a legal basis for the search. See *Thompson*, 284 Kan. at 776 (listing consent as one of the exceptions to the warrant requirement).

As we have repeatedly observed, there are four types of police-citizen encounters: (1) a voluntary or consensual encounter, which is not considered a seizure; (2) an investigatory stop or detention; (3) a public safety stop; and (4) an arrest. *Thompson*, 284 Kan. at 772. In the present case, Officer Bouthillier's stop of Fuero-Mendoza was an investigatory detention, or *Terry* stop. See *Terry*, 392 U.S. at 16-19.

7

When an officer conducts a *Terry* stop, the scope and duration of the seizure must be strictly tied to and justified by the circumstances which rendered its initiation proper. *Terry*, 392 U.S. at 19-20; *Thompson,* 284 Kan. at 773-75. Thus, in order to stop and detain a person, a law enforcement officer must have a reasonable suspicion that criminal activity is taking place, has taken place, or is about to take place. K.S.A. 22-2402(1); *State v. DeMarco*, 263 Kan. 727, 734, 952 P.2d 1276 (1998). An investigative detention must last no longer than is necessary to effectuate the purpose of the stop unless there is reasonable suspicion that some other crime has been or will be committed. *Florida v. Royer*, 460 U.S. 491, 500, 103 S. Ct. 1319, 75 L. Ed. 2d 229 (1983); *State v. Mitchell*, 265 Kan. 238, 244-45, 960 P.2d 200 (1998).

Although in his motion to suppress Feuro-Mendoza complained that Officer Bouthillier "extended the duration of the detention beyond what was reasonable," on appeal Fuero-Mendoza changes course and now asserts "the total time of the stop is not a determining factor."

With regard to the duration of a *Terry* stop, an investigatory detention must be temporary and last no longer than is necessary to effectuate the purpose of the stop. Similarly, the investigative methods employed should be the least intrusive means reasonably available to verify or dispel the officer's suspicion in a short period of time. *State v. Smith*, 286 Kan. 402, 410, 184 P.3d 890 (quoting *Royer*, 460 U.S. at 500), *cert. denied* 555 U.S. 1062 (2008). To determine whether law enforcement officers have complied with the temporal limitation of an investigatory detention, courts examine whether the officers diligently pursued a means of investigation that was likely to confirm or dispel their suspicions quickly, during which time it was necessary to detain the defendant. *Smith*, 286 Kan. at 410 (quoting *United States v. Sharpe*, 470 U.S. 675, 686, 105 S. Ct. 1568, 84 L. Ed. 2d 605 [1985]).

Here, Fuero-Mendoza is not claiming, and there is no evidence in support of any such claim, that the investigatory detention lasted longer than necessary to effectuate the purpose of the stop. As the district court found, only 8 minutes elapsed between the time the officer stopped Fuero-Mendoza and searched his backpack. Officer Bouthillier's questions attempting to discover the circumstances of the reported family fight were appropriate and designed to elicit Fuero-Mendoza's version of the events in an efficient manner. Moreover, Fuero-Mendoza does not allege or present evidence that during this brief time period Officer Bouthillier was stalling or otherwise intentionally prolonging the detention.

Rather than contesting the duration of the stop, Fuero-Mendoza argues that "[t]he heart of this appeal is the issue of consent, and whether it was given *within the scope* of the stop." (Emphasis added.) He argues the officer "first asked Fuero-Mendoza if he had been at [1213 Sundown Circle], and he said he was. This developed no probable cause for arrest. However, the officer next asked for consent to search the [back]pack." Given his characterization of the sequence of events, Fuero-Mendoza asserts "the case transitioned from a *Terry* investigation to an *unrelated* consent to search." (Emphasis added.) We disagree.

An investigatory detention must be reasonably related in scope to the circumstances which justified the interference. In this case, Officer Bouthillier stopped, identified, and briefly detained Fuero-Mendoza about a minute after being dispatched to the scene. The suspect was found a short distance from the residence which he had reportedly just left. The officer's stop and detention was initiated by a resident reporting a family fight to the Emporia Police Department. Officer Bouthillier also was advised that the resident was barricaded in her home because she was fearful of Fuero-Mendoza who had just left the residence.

9

During the 8-minute detention, Officer Bouthillier identified Fuero-Mendoza and asked him questions about the family disturbance. Some of these questions were repeated by the officer in order "to get clear answers" due to Fuero-Mendoza's heavy accent. Moreover, the officer discovered that Fuero-Mendoza possessed a pocket knife prior to and at the time of the stop. That pocket knife was surrendered and secured by the officer.

Importantly, during the brief detention, the district court found, based on undisputed evidence, that Officer Bouthillier "had no contact from other law enforcement. He had no information that would have made the length of the detention in this instance unreasonable." Officer Bouthillier, who stopped Fuero-Mendoza at about 1 minute after receiving the dispatch, was aware that Officer Avery had been dispatched to the residence to interview the reporting party and investigate the circumstances regarding the family fight. In fact, from the location of Fuero-Mendoza's detention, Officer Bouthillier could see Officer Avery's patrol car at 1213 Sundown Circle. We discern from the district court's finding that the court determined at the time Officer Bouthillier asked for consent to search the backpack he had not received any information from Officer Avery that the report of the family fight was unfounded.

Fuero-Mendoza's argument that "the officer was engaged in a *Terry* detention *which was accomplished*" prior to the officer's request for consent to search is contrary to the district court's finding which is well supported by the evidence. (Emphasis added.) At the time of the officer's request to search, the investigation had just begun. Officer Bouthillier may have obtained the suspect's account of the family fight, but he had not yet communicated with Officer Avery regarding the reporting person's account which apparently caused her to barricade herself in the residence out of fear of Fuero-Mendoza. On this record, there is substantial competent evidence to support the district court's conclusion that when Officer Bouthillier asked for consent to search Fuero-Mendoza's backpack, only 8 minutes after the stop, he was well within the appropriate scope of the investigation.

In support of his contention that Officer Bouthillier's request to Fuero-Mendoza for consent to search his backpack was beyond the scope of the detention, Fuero-Mendoza cites two cases involving purportedly consensual searches which occurred after passenger vehicles were stopped for traffic violations. See *State v. Spagnola*, 295 Kan. 1098, 289 P.3d 68 (2012), and *Smith*, 286 Kan. 402. According to Fuero-Mendoza, "[t]he traffic-stop cases show that our courts have drawn a line in the sand, and said that requests to search objects, when unrelated to the purpose of the stop, are constitutionally prohibited."

The precedent cited by Fuero-Mendoza is factually and legally distinguishable. First, the case on appeal is not a case where a motor vehicle was stopped for a traffic violation which later resulted in either a personal search of the driver's clothing or a search of a passenger's purse, both searches which were wholly unrelated to the reason for the traffic stop. See *Spagnola*, 295 Kan. at 1100-01; *Smith*, 286 Kan. at 403-04. In the present case, there was no traffic stop. The request for consent to search the backpack was made during a lawful detention to investigate a possible crime of domestic violence. Officer Bouthillier stopped Fuero-Mendoza based on suspicion that he had just been involved in a family disturbance which caused a resident to barricade herself in her home and contact the police. As agreed upon by the parties and determined by the district court, this was a valid *Terry* stop based on a criminal investigation of domestic violence just reported to the police.

Second, in the present case, the officer's request for consent to search was predicated on Fuero-Mendoza's agitated and suspicious behavior resulting in the officer's concern for his safety. In *Smith*, on the other hand, there were no such behaviors exhibited by the passenger or safety concerns by the officer, only the officer's suspicion that the passenger's purse may contain drugs.

11

Third, unlike the present case where the voluntariness of Fuero-Mendoza's consent is undisputed, in *Spagnola* in suppressing the evidence our Supreme Court found the consent was coerced and in violation of the Fourth Amendment. 295 Kan. at 1108.

Fuero-Mendoza also directs our attention to *State v. Yotter*, No. 95,436, 2007 WL 519017 (Kan. App. 2007) (unpublished opinion). In *Yotter*, the defendant was apprehended for trespassing in a Dillons' store. After the police officer removed hand restraints from Yotter, advised her she was not going to be arrested, and served her with a notice to appear for the criminal charge, he escorted her out of the store. As the pair was exiting, the officer asked Yotter if he could look in her purse and she consented, resulting in the discovery of methamphetamine. Yotter appealed the denial of her motion to suppress the contraband.

The State asserted that at the time of the request to search, Yotter and the officer were engaged in a voluntary encounter—a legal justification that is not relevant to Fuero-Mendoza's claim. Our court determined that "resolution of this case rests solely upon the question of whether Yotter's detention transformed into a voluntary encounter." 2007 WL 519017, at *2. Finding that to characterize the encounter as voluntary "one must ignore the totality of the circumstances and suspend all rational thought," our court affirmed the suppression. 2007 WL 519017, at *3. We also noted that at the time of the officer's request for consent to search the purse, "the officer's investigation had exceeded the permissible scope of Yotter's detention and the resulting search was not the product of a voluntary consent." 2007 WL 519017, at *3.

*Yotter* does not support Fuero-Mendoza's legal contention. In the present case, there was no claimed voluntary encounter, the investigation was ongoing and not completed, the appellant's behavior was suspicious, and Officer Bouthillier was concerned about his safety. In *Yotter*, the defendant had been apprehended for trespassing, served with a notice to appear, and was being escorted from the store to

12

resume her everyday activities when the request for consent, unrelated to the trespassing matter or any officer safety concerns, was made. Once again, Fuero-Mendoza has not presented us with relevant, on-point precedent in support of his legal position.

It is well settled that a search for weapons during an investigative detention may include the area within a suspect's immediate control as well as his or her person. *State v. Johnson*, 293 Kan. 959, 966, 270 P.3d 1135 (2012) (citing *Michigan v. Long*, 463 U.S. 1032, 1049, 103 S. Ct. 3469, 77 L. Ed. 2d 1201 (1983). That is what occurred here. Officer Bouthillier was only 8 minutes into investigating the recent report of a family fight involving Fuero-Mendoza, which resulted in the caller barricading herself in her home. The suspect possessed a pocket knife at the time of the incident. According to the officer, Fuero-Mendoza "seemed a little nervous, . . . a little confused. He was very agitated. . . . Consistently during our interview, he would look at this backpack, look at me in just kind of a jittery manner." As a result, Officer Bouthillier testified he was concerned about his safety because the backpack possibly contained "guns, knives, anything illegal." In this factual context, the detention was brief, and the investigation by the two officers was on-going. Officer Bouthillier was well within the scope of the detention, while in the immediate presence of the suspect, to request and obtain Fuero-Mendoza's knowing and voluntary consent to search the backpack.

We conclude that the district court's factual findings are supported by substantial competent evidence. Moreover, the district court did not err in its legal conclusion that the scope and duration of Fuero-Mendoza's detention was justified by the circumstances which rendered the *Terry* stop proper and that the appellant knowingly and voluntarily consented to the search of his backpack.

Affirmed.

\* \* \*

ATCHESON, J., concurring:  Given how the issues on Defendant Guillermo Fuero-Mendoza's motion to suppress were framed in the Lyon County District Court and the evidence presented at the hearing, I am constrained to join in the result affirming the denial of that motion. The district court record necessarily sets the metes and bounds of our review. My concurrence, however, extends *only* to the result.