NOT DESIGNATED FOR PUBLICATION

No. 118,055

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

TRAVIS M. SAMEK,
*Appellant*.


MEMORANDUM OPINION

Appeal from Wyandotte District Court; MICHAEL A. RUSSELL, judge. Opinion filed March 8, 2019. Affirmed in part, vacated in part, and remanded with directions.

*Dionne M. Scherff*, of Joseph, Hollander & Craft, LLC, of Overland Park, for appellant.

*Daniel G. Obermeier*, assistant district attorney, *Bryanna R. Hanschu*, assistant district attorney, *Mark A. Dupree Sr.*, district attorney, and *Derek Schmidt*, attorney general, for appellee.

Before BRUNS, P.J., SCHROEDER and GARDNER, JJ.

PER CURIAM:  Travis M. Samek appeals his conviction of two counts of rape, one count of aggravated criminal sodomy, and one count of aggravated indecent liberties with a child. Samek raises four claims on appeal. First, he alleges the district court erred in finding the forensic interviewers were experts and allowing the interviewers to testify at trial. Next, Samek argues there was insufficient evidence to support his conviction. He also claims the multiple errors by the district court require a cumulative error finding. Finally, he argues his sentencing journal entry requires correction. Upon our review of the record, we find Samek's first three arguments lack persuasion. We agree the journal

1

entry must be corrected. Thus, we affirm in part, vacate in part, and remand with directions.

FACTS

In March 2013, the State charged Samek with two counts of rape, one count of aggravated criminal sodomy, and one count of aggravated indecent liberties with a child. At the time of the allegations, Samek was over 18 years old and the victim, his daughter, J.S., was under 14 years old. Samek's case went to trial in 2015, but the jury deadlocked and the district court declared a mistrial.

The State proceeded against Samek for a second trial, and Samek moved to exclude testimony of three Sunflower House employees. The employees interviewed J.S., her two younger sisters, L.S. and E.S., and recorded the interviews on video. Samek asked the district court to exclude the videos and testimony of the Sunflower employees, alleging the employees were not qualified as experts under K.S.A. 2018 Supp. 60-456 and *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 589-94, 113 S. Ct. 2786, 125 L. Ed. 2d 469 (1993).

The district court held two evidentiary hearings where Dr. Robert Barnett and three Sunflower employees testified—Virginia Lewis-Brunk, Erin Miller Weiss, and Cheryl Smith.

Lewis-Brunk interviewed J.S. in 2013. Lewis-Brunk testified about her employment, education, experience, and training. She also testified she only trained under the National Children's Advocacy Center (NCAC) model of forensic interviewing and used the NCAC model to interview J.S.

Miller Weiss interviewed L.S. in 2013. Miller Weiss testified about her employment, education, training, and experience. According to Miller Weiss, in 2013 Sunflower House did not formally adopt a forensic interviewing structure but had accreditation for the NCAC model. Miller Weiss used the NCAC model in 2013.

Smith interviewed E.S. in 2013. Smith testified about her employment, education, training, and experience. According to Smith, Sunflower House used a flexible interview model during the year she interviewed E.S. When Smith interviewed E.S., she used a training model combining the NCAC model and two other forensic interviewing models, the "ChildFirst" and "Finding Words" models. According to Smith, her interview structure closely resembled the NCAC model.

Dr. Barnett testified about the RATAC model of forensic interviewing. In his opinion, the RATAC model is generally flawed because it uses leading questions and does not allow the child to develop his or her own narrative or explore alternative hypotheses of the child's allegation. Additionally, Dr. Barnett criticized the RATAC model because it is not peer reviewed. Dr. Barnett had reviewed video of the interviews of J.S., L.S., and E.S. According to Dr. Barnett, Lewis-Brunk used the RATAC model to interview J.S. Yet, Dr. Barnett testified he was unfamiliar with the NCAC interview model. Dr. Barnett admitted he had no formal training under the RATAC model. He also explained his formal forensic interview training and experience was limited to forensic models established before the current models.

The district court denied Samek's motion to suppress. It found Lewis-Brunk's proposed testimony would be expert testimony categorized as specialized knowledge and subject to *Daubert* analysis. It also found Lewis-Brunk's testimony admissible under *Daubert*. The district court placed "particular emphasis" on the fact Lewis-Brunk was not offering an opinion about anything when she testified about J.S.'s interview. Lewis-Brunk offered no opinion about whether J.S.'s interview was consistent with an interview of a

3

sexually abused child. The district court found the only opinion testimony offered by Lewis-Brunk was that it was not unusual for a child to add more detail later.

Even so, the district court found Lewis-Brunk's testimony reliable and admissible. The district court noted Lewis-Brunk used the NCAC model, a nonleading interview technique applied in a neutral manner. The court also reviewed Lewis-Brunk's interview of J.S. and concluded it used nonleading questions. Additionally, the court found the NCAC model was subject to peer review and publication. The district court also noted Lewis-Brunk attended a 40-hour training course to learn the NCAC model and participated in continuing education of forensic interviewing. As for Dr. Barnett's testimony, the district court found his observations and opinions could go to the trier of fact to weigh the evidence but would not bar the admissibility of Lewis-Brunk's proposed testimony.

The parties went to trial. After opening statements and outside the presence of the jury, the State moved to admit Exhibits 1 to 31, including the videos of the interviews Sunflower employees conducted with J.S., L.S., and E.S. Defense counsel reserved the right to object to the admission of the videos when each Sunflower employee testified. The State then called several witnesses, including Miller Weiss, Smith, Lewis-Brunk, J.S., L.S., and E.S.

Miller Weiss told the jury she had interviewed L.S., while Smith explained she had interviewed E.S. The State moved to admit and publish the videos of both interviews. The district court admitted the two videos and the State played them for the jury. Defense counsel made no objections during either Miller Weiss' or Smith's testimony.

Lewis-Brunk testified about her interview with J.S. She told the jury about her training and experience in forensic interviewing. She also explained the general process

4

of child forensic interviews and the protocol for outside observers. She then discussed her interview with J.S.

According to Lewis-Brunk, J.S. told her Samek had come up from behind her in bed, pulled her arm back, and forced her to touch his penis. He took J.S. from the bedroom to the living room and forced her mouth around his penis.

Lewis-Brunk explained she recorded the interview with J.S. She also testified J.S. made several drawings during the interview to help explain the layout of Samek's house and where he touched J.S.'s body. The State moved to admit the drawings and video of the interview. Defense counsel did not object. The district court admitted the exhibits and the State played the video.

Afterwards, Lewis-Brunk testified to the State's clarifying questions about the drawings but provided no opinions, expert or otherwise. On cross-examination, Lewis-Brunk testified about the definition and purposes of a forensic interview and child advocacy centers. She also testified in greater detail about her training for forensic interviews.

The video corroborated Lewis-Brunk's testimony. In it, J.S. told Lewis-Brunk that Samek made her touch his penis. J.S. described how Samek forced her to suck his penis twice. J.S. also described how Samek penetrated her vagina with his fingers and his penis. J.S. told Lewis-Brunk that Samek put his penis into her vagina but could not put it all the way in. The video also supported J.S.'s testimony.

According to J.S., she was 12 years old when she and her sisters stayed at Samek's house. J.S. slept on a mattress on the floor in Samek's bedroom while E.S., L.S., and Samek slept in his bed. In the early morning of March 16, 2013, J.S. woke up to Samek moving around the room. Samek laid behind J.S. and rubbed his hand against her waist

5

and under her shirt. Samek touched J.S.'s bra, over her breast. J.S. testified she was in shock and grabbed onto the metal frame of Samek's bed as he pulled J.S. to him. Samek pulled J.S. away from the bedframe and put her hand down his pants, forcing J.S. to touch his penis. Samek next pushed J.S.'s head onto his penis and forced her to suck on it. J.S. testified Samek forced his whole penis in her mouth. Samek then removed J.S.'s shorts and licked her vagina. Samek told J.S. "you're warm."

J.S. testified Samek then got up and tripped over the vacuum cleaner, waking E.S. and L.S. Samek told E.S. and L.S. to go back to bed. Samek took J.S. from his bedroom through the bathroom and into the living room. Samek put his hand down J.S.'s shorts and put his finger into her vagina. Next, Samek pushed J.S. to the couch, took off her shorts, and put his penis into her vagina. J.S. testified she was crying and told Samek to stop. Samek then removed his penis and again forced J.S.'s head onto his penis. After a few minutes, Samek stopped, told J.S. he was going to smoke a cigarette, and offered J.S. a cigarette. J.S. declined. Samek smoked outside for a few minutes, returned, and tried to stick his penis into J.S.'s anus but failed. He then told J.S. to sit on the couch and suck his penis again. Afterwards, J.S. removed her mattress from Samek's bedroom, returned it to her bedroom in his house, and stayed in her room.

Afterwards, J.S. told her mother, stepfather, medical staff, law enforcement, and Lewis-Brunk about the incident. She denied telling E.S. and L.S. about the incident. A nurse later examined J.S., but J.S. did not tell the nurse Samek had licked her vagina or anally penetrated her. Until a few days before trial, J.S. did not tell her mother or stepfather about those details. She also told jurors her mother and stepfather did not tell her what to say. J.S. told jurors she previously did not testify about Samek trying to lick her vagina or trying to anally penetrate her. J.S. told the jury those details recently came back into her head and she was a visual person.

6

L.S. testified about the night of the incident. She and E.S. slept with Samek in his bed while J.S. slept on her mattress on the floor. L.S. woke up to the sound of Samek hitting his knees on the dresser. Samek fell onto J.S.'s mattress and he told the girls to go back to sleep. L.S. slept and the next morning noticed something was wrong with J.S. She asked J.S. what was wrong, but J.S. did not tell her. L.S. also told the jury she previously testified she saw Samek and J.S. go into the bathroom.

E.S. corroborated J.S. and L.S.'s testimony. E.S. testified she and L.S. fell asleep in Samek's bed, but J.S. slept on her mattress in his bedroom. E.S. woke up to the sound of Samek tripping over furniture. Samek told L.S. to go back to sleep. E.S. later heard Samek tell J.S. her "private part" was warm, but E.S. could not recall what word he used instead of "private part." E.S. saw Samek walk J.S. into the bathroom. Although she could not see it, E.S. believed Samek and J.S. next went into the living room because she heard someone open the door from the bathroom to the hallway. The next morning, E.S. noticed J.S. was acting different, but J.S. did not tell E.S. what was wrong.

ANALYSIS

*No objection*

Samek now claims on appeal the district court erred in finding Lewis-Brunk, Miller Weiss, and Smith qualified to testify as experts under K.S.A. 2018 Supp. 60-456 and *Daubert* at the pretrial suppression hearing to exclude their testimony. However, upon review of the record, the State never offered the testimony of Lewis-Brunk, Miller Weiss, and Smith as expert witnesses. Even if we consider Samek's argument they testified as expert witnesses, we find Samek failed to timely object to their testimony and thus failed to preserve this issue for appeal as the State claims. The State's argument is persuasive.

7

K.S.A. 60-404 generally precludes an appellate court from reviewing an evidentiary challenge absent a timely and specific objection made on the record. *State v. King*, 288 Kan. 333, 342, 204 P.3d 585 (2009) (explaining the purpose behind the contemporaneous-objection rule of K.S.A. 60-404).

Generally, any pretrial objection to the admission or exclusion of evidence must be preserved by contemporaneously objecting at trial, which can be accomplished through a standing objection. See *State v. Holman*, 295 Kan. 116, 127, 284 P.3d 251 (2012), *overruled on other grounds by State v. Dunn*, 304 Kan. 773, 375 P.3d 332 (2016). But see *State v. Gaona*, 293 Kan. 930, 956, 270 P.3d 1165 (2012) (characterizing contemporaneous objection rule as a "prudential rather than jurisdictional obstacle to appellate review"). Kansas appellate courts have, on occasion, refused to strictly apply the contemporaneous objection rule upon finding the purpose for the rule was satisfied by other means. See, e.g., *State v. Spagnola*, 295 Kan. 1098, 1103, 289 P.3d 68 (2012) (finding that the contemporaneous objection rule does not bar appellate review when the same judge in a bench trial ruled against the defendant's pretrial motions and expressed familiarity with those issues at trial).

When no objection was lodged to Lewis-Brunk, Miller Weiss, or Smith's testimony, Samek failed to preserve his K.S.A. 2018 Supp. 60-456 or *Daubert* claim for appeal. See K.S.A. 60-404; *State v. Dupree*, 304 Kan. 43, 62, 371 P.3d 862 (2016). At trial, Samek did not renew his pretrial objections. Defense counsel made no standing objections against the Sunflower employees or video of the interviews. When Lewis-Brunk, Miller Weiss, and Smith testified, defense counsel did not object. Samek also did not object when the State moved to admit the videos and played them to the jury. As previously mentioned, our courts do not strictly apply the contemporaneous objection rule. However, none of the exceptions to the contemporaneous objection rule are present in Samek's appeal. See *Spagnola*, 295 Kan. at 1103. Samek's claim was not preserved.

*Sufficient evidence*

Samek next alleges there was insufficient evidence to find him guilty beyond a reasonable doubt.

> "'When sufficiency of the evidence is challenged in a criminal case, the standard of review is whether, after reviewing all the evidence in a light most favorable to the prosecution, the appellate court is convinced a rational factfinder could have found the defendant guilty beyond a reasonable doubt. Appellate courts do not reweigh evidence, resolve evidentiary conflicts, or make witness credibility determinations.' [Citation omitted.]" *State v. Chandler*, 307 Kan. 657, 668, 414 P.3d 713 (2018).

It is only in rare cases where the testimony is so incredible that no reasonable fact-finder could find guilt beyond a reasonable doubt that a guilty verdict will be reversed. See *State v. Matlock*, 233 Kan. 1, 5-6, 660 P.2d 945 (1983); see also *State v. Naramore*, 25 Kan. App. 2d 302, 322, 965 P.2d 211 (1998) (uncontroverted expert testimony that defendant physician's treatment was within reasonable health care protocols insufficient to uphold murder and attempted murder convictions).

Samek claims the prolonged divorce and custody proceedings between Samek and J.S.'s mother somehow tainted the evidence against him. He also alleges J.S. testified to new facts never disclosed before Samek's second trial, and J.S. gave contradictory testimony about the physical location of the sexual acts. Samek provides no pertinent authority to support these claims. Samek has failed to brief the issue and abandoned his argument. See *State v. Pewenofkit*, 307 Kan. 730, 731, 415 P.3d 398 (2018) (noting a failure to cite pertinent authority is a failure to brief); see also *State v. Arnett*, 307 Kan. 648, 650, 413 P.3d 787 (2018) (noting a failure to brief is treated as abandoning an issue).

9

Even if Samek properly briefed the issues, a reasonable fact-finder would find Samek guilty beyond a reasonable doubt when viewing all the evidence in a light most favorable to the prosecution.

The evidence to support Samek's convictions was previously mentioned. It shows the testimony of J.S., E.S., and L.S. corroborates the testimony of each other and was further supported by the three forensic interviewers' testimony. J.S.'s disclosure Samek licked her vagina and tried to penetrate her anally were identified as late disclosures, and Samek cross-examined J.S. on this point. Samek also questioned Lewis-Brunk about late disclosures from children. J.S. explained she recalled these details a few days before trial. These facts may raise questions about J.S.'s credibility, but the jury makes credibility determinations, not appellate courts. *Chandler*, 307 Kan. at 668. The district court instructed the jury to weigh all admitted evidence, including witness testimony. There is no evidence or argument by Samek the jury failed to follow its instructions.

Similarly, the jury could weigh whether custody issues between Samek and J.S.'s mother negatively influenced the testimony of J.S., L.S., and E.S. The jury chose to believe J.S. when it found Samek guilty on all counts.

Even presuming Samek did not lick J.S.'s vagina or attempt to penetrate her anally, the State did not charge him for those acts. The State charged Samek with two counts of rape, one alleging digital penetration of J.S.'s vagina, the other for penetrating her vagina with his penis. The State charged Samek with one count of aggravated criminal sodomy for putting his penis into her mouth. The State charged Samek with one count of aggravated indecent liberties with a child for forcing J.S.'s hand on Samek's penis. When viewing all the evidence in a light most favorable to the prosecution, a reasonable fact-finder would find Samek guilty beyond a reasonable doubt for the charged crimes. We find the evidence presented to the jury was sufficient to support Samek's conviction.

10

*Cumulative error*

Samek also raises a claim of cumulative error. We have found no trial errors, thus there cannot be any cumulative error. See *State v. Marshall*, 303 Kan. 438, 451, 362 P.3d 587 (2015); see also *State v. Butler*, 307 Kan. 831, 868, 416 P.3d 116 (2018) (citing both no error and single error rules).

*Sentencing journal entry on lifetime postrelease vacated*

The district court sentenced Samek to a controlling sentence of two life terms with mandatory minimums of 25 years on each count, and lifetime parole to follow. The journal entry of judgment states Samek was ordered to serve lifetime postrelease, not parole. Both Samek and the State agree this error must be corrected. We vacate the sentence and remand to the district court to correct the journal entry sentencing error to reflect lifetime parole.

Affirmed in part, vacated in part, and remanded with directions.