Leben, J.:
Marcus Guein, Jr., appeals Iris conviction for two drug-related offenses, claiming that statements he made to a police officer should not have been allowed at his trial because they weren’t made voluntarily. Guein made the statements while he was handcuffed and in police custody—and after he’d been read his Miranda rights.
After carefully reviewing Guein s interaction with the police officer who questioned him, we agree with Guein that the officer’s forceful admonitions to cooperate when the officer questioned him—admonitions that contained an implied threat of physical harm if Guein did not cooperate—rendered his statements to the officer involuntary and inadmissible. We therefore reverse his convictions and remand the case to the district court for further proceedings.
We want the reader to know that we do recognize that some of the language in our opinion is vulgar enough that it cannot be used on over-the-air television shows. Yet we have used it in a pub-fished judicial opinion. We do so because this language carries a certain force that’s not necessarily apparent if we rephrase it. We must judge the effect of the words said—in this case by a police officer—on the person in handcuffs who heard them. To make that judgment and to explain our decision, we must repeat the actual words used and place them in the context in which they were said.
With that introduction, we turn now to the factual and procedural setting in which these issues are presented. We will then address each of the three legal issues Guein raises on appeal, only one of which is successful.
Factual and Procedural Background
Around 1:30 a.m. on August 16, 2014, two Lenexa police officers, Curtis Weber and Megan Larson, were heading back to the police station when they noticed two cars in the parking lot of a Burger King that they believed was closed. Weber considered the area a high-crime area. The officers saw the driver of a brown Chevy *397 Caprice, later identified as Guein, get out and enter the passenger side of the other vehicle, a blue Saturn Ion. Believing that a drug deal was taking place, Weber pulled into the parking lot, switched off the headlights on the patrol car, and parked several spaces away from the other cars.
Weber approached the open window on the drivers side of the Ion and immediately smelled the odor of marijuana coming from the car. He asked the driver, Jordan Gresham, to step out of the car and for permission to search him. Gresham agreed; nothing was found on him.
As Weber finished with Gresham, Larson asked Guein to step out of the vehicle. Weber then approached Guein and asked him if he had any weapons on him, which Guein denied. The officer asked Guein if he would consent to a pat-down to check for weapons, and Guein did. Weber had Guein place his hands on his head during the pat-down, facing away from the officer. The officer then asked Guein if he could reach inside his pockets; Guein again consented. Weber removed several items from Gueins pockets and placed them to the side. Weber agreed at the suppression hearing that Guein was not free to leave at that point.
Weber said that while he was doing the pat-down, he noticed a strong odor of fresh marijuana coming from Guein. He said to Guein, “Dude, you reek of weed,” and asked Guein how much marijuana he had on him. Guein replied, “I have none.” Weber responded, “You have none?” Guein replied that he had “a little bag” on him. Weber asked him where it was, and Guein indicated that it was in his underwear. Weber asked Guein to retrieve the bag of marijuana, and he complied. After Guein had handed over the marijuana, Weber handcuffed him, with Gueins hands behind him, and began to walk with Guein to the police car.
We are able to report tire next part of the conversation between Guein and Weber in detail because it’s recorded on a video of their encounter and is part of our record. In between handcuffing Guein and putting Guein into the police car, Weber told Guein several things, including that he was going to be asking him some questions in a while and that Guein should “be honest with” and not “fuck with” him:
*398 Weber: “Right now is the time to be honest with me, man, okay? Don’t fuck around with me and I ain’t gonna fuck around with you, okay? You hear me?”
Guein: “I’m not going to fuck around with you.”
Weber: “Listen, man. I’m telling you right now I know what you’re doing out here. I’m going to ask you some questions here in a little bit.”
Guein: “Yes, sir.”
Weber: “Don’t fuck with me, okay?”
Guein: “I understand, sir.”
Weber: “You hear me? You don’t screw around with me, I ain’t gonna screw around widr you. I’m gonna do what I can to help you out, okay?”
Guein: “Yes, sir.”
Weber: “I’m telling you right now, I know what’s going on, all right? Have a seat.”
At that point, Weber placed the handcuffed Guein in the back seat of a patrol car.
We should report a few more things that Weber discussed with Guein in between handcuffing him and giving him the Miranda warnings. We don’t have a recording of this párt of the conversation because the district court granted the defendants motion to keep these statements out of the jury trial. Accordingly, they were deleted from the video that was played to the jury—and that video is apparently the one that has been included in the record provided to us. (Based on the transcript of the suppression hearing, a slightly different version of the video, apparently with fewer deletions, was admitted in evidence at that hearing. The parties made no comment in their appellate briefs about why only the video from the trial is included in our record.)
Weber testified that he had asked Guein whether there was any other marijuana in either of the cars. Guein eventually admitted that there was some in the brown Chevy Caprice. Weber looked through the windows of the car and saw a handgun on the driver’s side floorboard just underneath the driver’s seat and some loose bits of unsmoked marijuana (known as marijuana shake) throughout the car. As a result of this observation, Weber requested that a police unit with a drug-detection dog come to the scene. Fte also removed the gun from the car and secured it. Guein legally owned the gun, which he said he needed- for protection in his neighborhood in Kansas City, Missouri.
Our record doesn’t tell us whether Lenexa officers are trained *399 to provide a warning of the sort given to Guein to suspects on a general basis, but we do know that Officer Weber gave essentially the same warning to both suspects in this case. After Weber had placed Guein in the police car to await their later discussion, he told tire other suspect that he would ask him questions a bit later and warned him not to “fuck around with me”:
“I’m going to tell you just like I told your buddy: We know what’s going on here, okay? We’re not going to ask you questions right now, we’re going to ask you questions here in a minute, all right? I’m gonna tell you, don’t fuck around with me, okay? You don’t screw with me, I ain’t gonna screw with you, you understand? All right? And I’ll tell you, I know what’s happening right now. All right? Have a seat.”
And as with Guein, the other suspect was then put in the back seat of a patrol car and left to await further interrogation.
After Weber had that conversation with the other suspect, Weber returned to Guein, who had been sitting, handcuffed in the patrol car for about 10 minutes. Weber then said he was required to read Guein his rights because Guein was in handcuffs; we again have a recording of this conversation. Weber read the Miranda warnings and tiren asked whether Guein wanted to talk to him:
Weber: “All right, man, I’m going to read you your rights. You ever been arrested?”
Guein: “No.”
Weber: “Never? You never been put in handcuffs?”
Guein: “No.”
Weber: “Okay. I’m gonna read you your rights. You’ve seen or heard it on TV; I’ve gotta do it because you’re in handcuffs, okay? You have the right to remain silent. Anything you say can and will be used against you in a court of law. You have the right to talk to a lawyer and to have him present while you’re being questioned. If you cannot afford to hire a lawyer, one will be appointed to represent you before any questioning if you wish. You can decide at any time to exercise these rights, not answer any questions, or make any statements. Do you understand each of those rights that I’ve explained to you—there were five of them?”
Guein: ‘Tes, sir.”
Weber: “And with those rights in mind, do you want to talk to me?”
Guein: “Yeah, man.”
Weber then asked Guein why he was in the Burger King parking lot at 1:30 in the morning. Guein explained that he had initially gone to the Burger King for an Icee and had then met Gresham “to help him out with something.” Weber asked him to explain, and *400 Guein responded, “He had asked me, did I know where he could find something like that, and I was like, maybe so.” Weber asked Guein, “Find something like what?” Guein replied, “Like what you fouiid on me.” Weber asked whether Guein meant the marijuana, and Guein responded, “Yes, sir.” Upon further questioning, Guein acknowledged that he had purchased the marijuana for $25 and intended to sell it to Gresham for $50.
Guein told Weber that he was nervous and asked whether he could call his “lady friend” as she was expecting him to return. Weber responded that they would get everything “squared away” but that it would take a few minutes and instructed Guein to “sit tight.”
A short time later, Weber returned to the car and spoke to Guein about whether he would be willing to speak with drug detectives about working as a confidential informant. Weber explained that people often can get dreir charges to go away by doing so. Guein responded that he didn’t know anyone who sold drugs on the Kansas side of the state fine, where these law-enforcement officers worked, but he wished he did so that he could take advantage of the offer.
Eventually, during a more thorough search of Guein’s car, police found marijuana in a glass jar, rolling papers, a marijuana pipe, a wood grinder, and a box of plastic baggies. Police also found the remnants of several marijuana cigarettes in the ashtray.
The State charged Guein with possession of marijuana with the intent to distribute it, felony possession of drug paraphernalia, and misdemeanor possession of drug paraphernalia.
Guein filed a motion to suppress to prevent statements he had made and the evidence that had been recovered from being used against him at trial. The motion itself and the State’s response were not included in die record on appeal, but we have a transcript of die evidentiary hearing the district court held on March 5, 2015. Weber, Larson, and Guein all testified, generally as we’ve described here. Guein argued that the court should suppress the statements he made bodi before and after he was given die Miranda warnings. He argued that his pre-Miranda statements should be suppressed because the officer had interrogated him while he was in custody without first informing him of his Miranda rights. He argued that *401 his -post-Miranda statements should be suppressed because the officer had threatened him by saying, “Don’t fuck around with me and I ain’t gonna fuck around with you,” making him feel like he had to confess. Guein contended that the bag of marijuana and the items found in the car should also be excluded from trial because the police had discovered them by violating his constitutional rights when questioning him.
The State argued that the officers were justified in investigating further when they witnessed suspicious activity in a high-crime area and had probable cause to search the vehicle once they smelled marijuana in the car. The State maintained that Guein’s pre-Miran-da statements should not be suppressed because when the officer asked how much marijuana Guein had on him, Guein was not in police custody and was not yet required to be given the Miranda warnings. In regard to the post-Miranda statements, the State argued that Weber’s alleged threat was simply a “be-straight-with-me speech,” which is permissible, and not a threat, which isn’t, so Guein’s post-Miranda statements should not be suppressed as he had voluntarily waived his right to remain silent. The State also argued that because the loose marijuana was plainly visible through the window of the car, the officer had the right to conduct a search without a warrant independent of anything Guein had said. Finally, the State claimed that the marijuana in Guein’s pants would inevitably have been discovered while Guein was being booked in jail and could, therefore, be used at trial.
The district court made an oral ruling at the close of the hearing. The court held that the police had the right to investigate upon witnessing Guein get into Gresham’s car since it was late at night and in a high-crime neighborhood, “a zone where drug sales are taking place.” The court concluded that the officers had the right to investigate further upon smelling the marijuana odor coming from the car. The court determined that Guein was in custody when he was handcuffed and should have been given the Miranda warnings; so it suppressed the statements Guein made’from the time he was handcuffed until he was given Miranda warnings, but it allowed his statements from before being handcuffed to be used at trial.
*402 In regard to the post-Miranda statements, the district court concluded that Guein had voluntarily waived his rights:
“Second issue as to the post-Miranda. Once [Guein was] Mirandized in the vehicle, I don’t find anything—I understand it’s a difficult case and the circumstances—but I don’t find anything that it was—that there was not an understanding by the defendant or that it was an involuntary waiver of Miranda and so I’m going to deny the defense motion to suppress any of the statements made after Miranda was given.”
The district court also denied Guein’s request to have the physical evidence (the marijuana baggie and the other items found in the car) suppressed “partially because of my ruling on the first issue on the pre-Miranda statements” and because the loose marijuana in the car was in plain view, which would have justified a search during which the police would have discovered the other evidence.
Guein’s case then proceeded to trial. A jury found him guilty of possession of marijuana with tire intent to distribute it and misdemeanor possession of drug paraphernalia but not guilty of felony possession of drug paraphernalia. The district court sentenced Guein to 18 months on probation, but if Guein failed on probation he would serve the underlying sentence of 14 months in prison.
Guein has appealed to our court.
Analysis
Before we get into the specifics of Guein’s appeal, we should review tire legal principles that will guide us. The case is here on Guein’s appeal of the district court’s denial of his motion to suppress certain evidence from being admitted at his trial. When we review a district court’s decision on a motion to suppress, we first review the district court’s factual findings to determine whether they are supported by substantial evidence. State v. Dern, 303 Kan. 384, 392, 362 P.3d 566 (2015). Substantial evidence means legal and relevant evidence that a reasonable person would find adequate to support a conclusion. State v. May, 293 Kan. 858, 862, 269 P.3d 1260 (2012); State v. Walker, 283 Kan. 587, 594-95, 153 P.3d 1257 (2007). We then review tire district court’s ultimate legal conclusions independently, with no required deference to its conclusions. Bern, 303 Kan. at 392. We do not reweigh evidence, assess *403 the credibility of witnesses, or resolve conflicts in tire evidence. 303 Kan. at 392.
When the significant facts are not in dispute, however, whether to grant or deny a suppression motion presents a question of law. over which we have unlimited review. State v. Stevenson, 299 Kan. 53, 57, 321 P.3d 754 (2014); State v. Garcia, 297 Kan. 182, 187-88, 301 P.3d 658 (2013). Here, most of the evidence critical to the issues presented to us is not disputed—and no one contests that Officer Weber said tire words that are recorded on video. Accordingly, we consider independently whether the “don’t fuck with me” warnings Weber gave to Guein before providing the Miranda warnings warrant suppression of statements Guein made in response.
Guein makes three separate challenges to specific evidence against him. First, he argues that he was in custody—thus requiring that Miranda warnings be given—when the officer asked him whether he had marijuana on him. Because of that, he asks that the court exclude his statement that he had marijuana in his possession. Second, he argues that the officer didn’t have valid reason to search his person, which is where the officer found a bag of marijuana. Because of that, he asks that the marijuana found on him not be allowed in evidence. Third, he argues that the officer’s admonition that he not “fuck around with” the officer when asked questions negated the Miranda warning he was given so that his post-Miranda statements should not be allowed at trial. We will discuss each of these challenges separately.
I. The District Court Properly Denied Guein’s Request to Suppress Guein’s Statements Made Before He Was Placed in Handcuffs Because the Encounter at That Point Was a Reasonable Investigatory Detention Similar to a Traffic .Stop.
Guein’s first argument is that the statements he made before being handcuffed should be suppressed. As we have already noted, Guein admitted to having marijuana on him after Weber told Guein that he “reek[ed] of weed”, and then asked him twice whether he had any. Guein argues that this statement can’t be used against him *404 because the officer didn’t give him Miranda warnings before asking whether he had any marijuana.
Under the well-known rule in Miranda v. Arizona, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1996), police must provide several warnings to a suspect in custody before that suspect is interrogated. The rule helps to implement safeguards of the Fifth Amendment to the United States Constitution, which provides a right to remain silent about criminal wrongdoing. The Miranda warnings are familiar ones: that the defendant “has a right to remain silent, that any statement he does malee may be used as evidence against him, and that he has a right to the presence of an attorney, either retained or appointed.” 384 U.S. at 444. Section 10 of the Kansas Constitution Bill of Rights has been interpreted to provide the same protection. State v. Jones, 283 Kan. 186, 194, 151 P.3d 22 (2007), disapproved on other grounds hy State v. Nelson, 291 Kan. 475, 243 P.3d 343 (2010); State v. Bordeaux, 38 Kan. App. 2d 757, 759, 172 P.3d 78 (2007).
So two elements must be present for Miranda warnings to be required: interrogation and custody. Guein obviously was asked whether he had any marijuana on him; the only dispute in our case is whether he was “in custody” for Miranda purposes. That happens when a person is taken into custody or otherwise deprived of his or her freedom in a significant way. Yarborough v. Alvarado, 541 U.S. 652, 661, 124 S. Ct. 2140, 158 L. Ed. 2d 938 (2004); Bordeaux, 38 Kan. App. 2d at 759-60.
At first, whether a person is in custody for Miranda purposes seems an easy question. The United States Supreme Court has described the essential question as whether, under the circumstances of the interrogation, a reasonable person would have felt that he or she could end the investigation and leave. Alvarado, 541 U.S. at 663; Jones, 283 Kan. at 193-94; Bordeaux, 38 Kan. App. 2d at 760. But other cases complicate the apparent simplicity of this test, in which we ask whether a reasonable person would have felt free to leave. That’s because the Supreme Court has also recognized that there are some situations—like common traffic stops—in which a person may not truly be free to leave but still has not been “subjected to restraints comparable to those associated with a formal *405 arrest,” so Miranda warnings need not be given. Berkemer v. McCarty, 468 U.S. 420, 441, 104 S. Ct. 3138, 82 L. Ed. 2d 317 (1984); see also Bordeaux, 38 Kan. App. 2d at 760.
We note too that whether a person is in custody for Miranda purposes is determined under an objective test, not based on tire specific understanding of the person whose freedom was restricted in some way. Berkemer, 468 U.S. at 441-42; State v. Summers, 293 Kan. 819, 826, 272 P.3d 1 (2012). Otherwise, officers in the field would not know how to guide their conduct. State v. Morton, 286 Kan. 632, 645, 186 P.3d 785 (2008); see LaFave, Israel, King & Kerr, Criminal Procedure § 6.6(c), pp. 373-75 (5th ed. 2009). Kansas courts have set out eight factors to consider, along with the other facts of each case:
“Several nonexclusive factors may be considered when reviewing the totality of the circumstances surrounding a defendant’s statements to determine admissibility, including: (1) when and where the interrogation occurred; (2) how long it lasted; (3) how many police officers were present; (4) what the officers and defendant said and did; (5) the presence of actual physical restraint of the defendant or things equivalent to actual restraint such as drawn weapons or a guard stationed at the door; (6) whether the defendant is being questioned as a suspect or a witness; (7) how the defendant got to the place of questioning, that is, whether he or she came completely on his or her own in response to a police request or was escorted by police officers; and (8) what happened after the interrogation—whether the defendant left freely, was detained, or was arrested.” Summers, 293 Kan. 819, Syl- ¶ 3.
Here, while Guein was arrested after the interrogation and was being questioned as a suspect, the other factors generally do not suggest treating this as a custodial interrogation. The events were in a public place—a Burger King parking lot—and at the time Weber asked Guein whether he had any marijuana, there were only two officers present (which matched the number of suspects). Guein arrived there on his own, and he had not yet been physically restrained (though he was subjected to a pat-down weapons check for officer safety). And at tire time Weber asked these questions, the interaction had only lasted a minute or two. In sum, this portion of the encounter was much like a traffic stop, ordinarily considered an investigatory detention not requiring Miranda warnings, at least in its early stages.
*406 Guein cites this courts 2007 decision in Bordeaux in support of his position. But the facts in that case are quite different from the ones here. In Bordeaux, police ordered the defendant at gunpoint out of hiding in a small, dark storage shed behind a house. The officers—in an authoritarian way and with guns drawn—ordered the man to put his hands on the shed so he could be patted down for weapons. And while that was in progress, an officer asked whether a coat linked to a suspicious person who had been in the area belonged to the man. In those circumstances—a man ordered out of hiding at gunpoint by multiple officers using strong vocal commands and ordering the man into an immobilizing position—we concluded the defendant was in custody for Miranda purposes. 38 Kan. App. 2d at 764-66.
While its true that the questions at issue in both Bordeaux and our case were asked during the pat-down for weapons, the similarities pretty much end there. In Bordeaux, officers ordered the man out of hiding in a shed at gunpoint; here, Weber asked Guein to step out of the car with the officers weapon in its holster. In Bordeaux, officers ordered the man to put his hands on the shed so he could be patted down; here, Guein agreed to the officer’s request for a pat-down, and the officer asked permission to search inside Guein’s pockets. Neither Bordeaux nor Guein was free to leave at the moment these questions were asked, but that’s only one factor that a court looks at to determine whether Miranda advisories were required. Guein’s freedom of movement was not curtailed to a degree associated with formal arrest: Being in custody for Miranda purposes is not the same as being detained briefly—without physical restraints'—to answer a few questions in a public place. The district court did not err when it denied Guein’s motion to suppress his statements that he had some marijuana on him.

II. The District Court Properly Denied Guein’s Request to Suppress Evidence of the Marijuana Found on His Person Because the Officer Had Probable Cause to Search Guein.

Guein next argues that the evidence of the marijuana found on him should be suppressed because Officer Weber didn’t have legal authority to search him for marijuana. The State argues that the *407 officer had probable cause to search Guein because the officer detected the smell of marijuana coming from him.
The Fourth Amendment to the United States Constitution and Section 15 of the Kansas Constitution Bill of Rights protect the right of all of us to be free from unreasonable searches and seizures by the government. See State v. Talkington, 301 Kan. 453, 461-62, 345 P.3d 258 (2015); State v. Karson, 44 Kan. App. 2d 306, 307, 235 P.3d 1260 (2011), aff'd 297 Kan. 634, 304 P.3d 317 (2013). Caselaw interpreting the Fourth Amendment tells us that a search without a warrant is unreasonable unless it falls within one of several limited, well-defined exceptions to the warrant requirement. State v. Sanchez-Laredo, 294 Kan. 50, 55, 272 P.3d 34 (2012); see also State v. Mullen, 304 Kan. 347, Syl. ¶ 2, 371 P.3d 905 (2016) (interpreting Section 15 of the Kansas Constitution Bill of Rights to provide the same protection as the Fourth Amendment to the United States Constitution). Getting a warrant requires a showing of probable cause to search or seize some specific person or place. U.S. Const, amend. IV (“[N]o Warrants shall issue, but upon probable cause . . . .”)•
Here, the State argues that the officer had probable cause to search accompanied by exigent circumstances, which is one of the warrant-requirement exceptions. Sanchez-Laredo, 294 Kan. at 55. By probable cause, we mean that a reasonable person would conclude that there is a fair probability that the place to be searched contains contraband or evidence of a crime. Florida v. Harris, 568 U.S. 237, 243-44, 133 S. Ct. 1050, 185 L. Ed. 2d 61 (2013); Sanchez-Loredo, 294 Kan. 50, Syl. ¶ 2. By exigent circumstances, we mean that the law-enforcement officer has a reasonable belief that there is a threat of imminent loss, destruction, removal, or concealment of the evidence or contraband. 294 Kan. 50, Syl. ¶ 3. As we have already noted, the Fourth Amendment usually requires a warrant, and warrants may only be issued on probable cause. So probable cause is required either to get a warrant or to apply this exception to the warrant requirement. The point of the exception for exigent circumstances is to allow an officer to search for something when the process of getting a warrant might allow the item to be hidden or destroyed.
*408 The State has the burden to show that a warrantless search was lawful. State v. James, 301 Kan. 898, 908, 349 P.3d 457 (2015). Guein argues that Officer Weber didn’t have probable cause to search him for drugs; thus, Guein contends, Weber couldn’t direct that Guein give him the bag of marijuana Guein had hidden in his underwear. The State asks that we find that Weber had probable cause based solely on Weber’s detection of the odor of marijuana on Guein. The State cites State v. MacDonald, 253 Kan. 320, Syl. ¶ 2, 856 P.2d 116 (1993), which held that the odor of marijuana, “standing alone, provides probable cause for a motor vehicle search.” No Kansas case has applied the same rule to the search of a person. The State urges that we do so in this case, and it cites a number of out-of-state cases in support of that proposition.
But we need not address that question to decide whether Weber had probable cause to search Guein for marijuana. Weber had not only smelled marijuana on Guein’s person—Guein had admitted he had marijuana on him. We have already concluded that Guein’s admission that he had marijuana in his underwear is admissible, and Weber could rightly consider that admission in addition to the smell of marijuana. That gave Weber probable cause for the search; he had ample reason to believe that Guein had marijuana on him and to conduct the equivalent of a search by directing that Guein hand the bag over. Guein does not dispute that, given the possibility that a small amount of drugs could be hidden or destroyed, exigent circumstances were present. See Illinois v. McArthur, 531 U.S. 326, 331-32, 121 S. Ct. 946, 148 L. Ed. 2d 838 (2001); State v. Fewell, 286 Kan. 370, 384-85, 184 P.3d 903 (2008). The district court did not err in denying Guein’s motion to prevent the admission of the bag containing marijuana into evidence.
III. The District Court Erred in Denying the Motion to Suppress Guein’s Post-Miranda Statements Because the Officers Warning Not to “Fuck With” Him Was Threatening and Effectively Negated the Miranda Warning on the Facts Found Here.
Guein’s final argument is that Webers statement constituted threats and promises that had a coercive effect on him, rendering his post-Miranda statements involuntary. When a defendant claims *409 that statements made to police weren’t voluntary, the State has the burden to show that the statement was the product of the defendant’s free and independent will. State v. Randolph, 297 Kan. 320, 326, 301 P.3d 300 (2013).
In determining whether a statement is voluntary, courts look at all the circumstances, including a nonexclusive list of factors:
“““(1) the accused’s mental condition; (2) the manner and duration of the interrogation; (3) the ability of the accused to communicate on request with the outside world; (4) the accused’s age, intellect, and background; (5) the fairness of the officers in conducting the interrogation; and (6) the accused’s fluency with the English language.’ [Citation omitted.]””’ Randolph, 297 Kan. at 326 (quoting State v. Stone, 291 Kan. 13, 21, 237 P.3d 1129 [2010]).
When considering these factors, a court looks at the situation in its entirety. Sometimes circumstances may lessen the importance of an individual factor that might otherwise have a coercive effect. But if a single factor or combination of factors “ ‘ “inevitably lead to a conclusion that under the totality of circumstances a suspect’s will was overborne . . . the confession was not therefore a free and voluntary act.”’” Garcia, 297 Kan. at 188 (quoting State v. Sharp, 289 Kan. 72, 81, 210 P.3d 590 [2009]).
Before going further, we must consider how we should look at the underlying facts. In addition to the testimony we noted earlier in our opinion, Guein testified that he had taken Weber’s statements as a threat of physical harm if Guein didn’t tell Weber what he wanted to hear. In addition, Guein testified that he had smoked marijuana earlier that day, which he said had made him “more paranoid and fearful with [the officers].”
The district court made no factual findings specifically related to this testimony from Guein. Regarding whether Guein’s post-Miranda statements should be suppressed, the court said it was “a difficult case” but concluded “that there was not an understanding by the defendant or that it was an involuntary waiver of Miranda and so I’m going to deny the defense motion to suppress any of the statements made after Miranda was given.” Neither party asked tire district court to make any additional factual findings.
On appeal, we must accept the district court’s factual findings, and when specific findings haven’t been made and no party *410 requested additional findings, we generally presume that the district court found whatever facts are supported by the evidence that would support its ruling. Dem, 303 Kan. at 394. Under that presumption, we would conclude that the district court apparently didn’t believe Guein’s testimony since it ruled against him. For that reason, we will not consider Guein’s testimony that his impression of Webers statements was affected by marijuana use that day or Guein’s testimony about how he subjectively felt fear of physical harm when he heard Weber’s statements. We will instead restrict our analysis to the words recorded on the videotape, taken in the context in which they were said. No one has disputed that the videotape accurately portrayed the conversation Weber had with Guein. And when we consider that conversation in context, we conclude that the State failed to meet its burden to show that the statements Guein made post-Miranda were voluntary.
Guein emphasizes the officer’s admonition that Guein not “fuck around with” him and that if Guein complied, the officer would not “fuck around with” Guein—comments that were made while Guein was already handcuffed. Guein then argues, “The standard for a [non] coercive environment should rise far above a level where an individual needs to fear what a law enforcement officer might mean by threatening to Tuck around with’ them.” We agree.
Taken in context, a reasonable person would conclude drat Officer Weber made an implied threat of physical violence and connected it to answering the questions Weber would soon be asking in a way that conformed widi Weber’s understanding. Weber advised Guein that he was “going to ask you some questions here in a little bit.” Weber told Guein, “I know what you’re doing out here.” And Weber told Guein drat if Guein didn’t “fuck around with” him, then “I ain’t gonna fuck around with you.” Or, as Weber restated it, even though Guein had already said he understood tire officer, “You don’t screw around with me, I ain’t gonna screw around witir you.”
To be sure, Weber left some ambiguity about whether he would physically harm Guein or just make the criminal process more difficult. After telling Guein not to “screw around with” him, Weber added, “I’m gonna do what I can to help you out, okay?” That and *411 other comments suggested that Weber would try to help Guein in the criminal process if Guein cooperated (by answering Weber’s questions in a way Weber thought truthful) and that Weber would not help him in that way if Guein didn’t cooperate (by not answering or not answering truthfully).
But in context, a reasonable person would be concerned about possible physical harm from Weber’s comments. Weber made them forcefully. Weber made them only after Guein’s hands were handcuffed behind his back, leaving him vulnerable to physical violence. And Weber then left Guein handcuffed in the police car,for about 10 minutes to think this over before giving him his Miranda warnings.
The context of those Miranda warnings is also important in determining whether the State showed that Guein’s post-Miranda statements were voluntarily made. When Weber said he was going to read Guein his rights, he said, “I’ve gotta do it because you’re in handcuffs.” He then read through them at a rapid pace before asking, “And with those rights in mind, do you want to talk to me?” Given the comments Weber had already made before putting Guein in the police car, quickly reading the Miranda rights because “I’ve gotta do it” would not have been sufficient to overcome the implied threat of physical harm already put in place if Guein didn’t answer the officer’s questions in a way that was consistent with Weber’s expectations. Accordingly, Guein’s post-Miranda statements should not have been admitted: “An extrajudicial confession will not be received into evidence unless it has been freely and voluntarily made, and if the confession has been extorted by fear . . . , it will be excluded as involuntary.” Garcia, 297 Kan. 182, Syl. ¶ 5.
The State notes that Guein is a college-educated man who brought a gun with him while meeting up with someone to sell marijuana. Based on these facts, the State argues, Guein would not have been affected by the use of foul language. The State misses the point with this argument. The use of profanity here simply amplified the serious nature of the statements being made, as tire use of any particularly strong language, forcefully said, might do. It’s only because that language was accompanied by words conveying additional messages—that Weber was going to be asking questions, *412 that Weber expected cooperation when he did so, and that Weber might “fuck with” Guein if he didn’t cooperate—that tip the balance here strongly in Guein s favor when we consider whether the State proved the statements were made voluntarily.
The district court in this case considered the voluntariness question to be “a difficult case” but ultimately concluded the statements were voluntary. Although tire district court here didn’t set forth a detailed analysis of tire issue, we suspect that its review was like that of the district court in State v. Stone, 291 Kan. 13, 237 P.3d 1229 (2010), and, one might argue, that of the dissent in our case, which separately reviews each listed factor. In Stone, the district court gave separate consideration to each of several factors that might have made the defendant’s statements involuntary and found each of them insufficient—when considered separately. The Kansas Supreme Court reversed, finding that the effect of all of the factors when taken togedrer required drat the court conclude drat the confession was involuntary, even though the defendant had been read his Miranda rights. The court’s conclusion in Stone seems applicable here as well:
"While any one of the circumstances surrounding this interrogation, standing alonef,] . . . might not have led us to conclude [die defendant’s] statements were coerced, a review of die audio recording taking into account all of these circumstances . . . leads us to conclude as a matter of law that [the defendant’s] statements were not the product of his free and independent will and diat it was error to admit them at trial.” 291 Kan. at 32-33.
Guein also argued that the statements should be considered involuntary because of promises Weber made. The State suggests that in the district court, Guein argued only that Weber’s statements constituted a threat—and not that they promised any sort of benefit in exchange for his statements to the officer. Accordingly, the State suggests that we cannot consider on appeal die argument that Weber offered anything to induce Guein’s statements. But Guein’s attorney characterized Weber’s statements as a “converse threat and a promise,” and Guein testified that he understood that he should “[t]ell [Weber] what he wanted to hear and hopefully this will work out for me.” So Guein made a sufficient argument in the district court for him to pursue the claim on appeal that Weber’s *413 statements were both a threat and a promise sufficient to override his free will.
Even so, we do not find his argument that his statements were induced by a promise persuasive. Webers only “promise” was that he would “do what I can to help you out” if Guein cooperated. We do not consider that a sufficient promise of action that it would have likely induced Guein to malee false statements in response. See Garcia, 297 Kan. 182, Syl. ¶ 6; State v. Johnson, 253 Kan. 75, 84, 853 P.2d 34 (1993) (holding that officers alleged implied promise that if defendant cooperated he could receive a lesser sentence was not so coercive as to make a confession involuntary); United States v. Binford, 818 F.3d 261, 271-72 (6th Cir. 2016) (stating that promises merely to recommend leniency in exchange for cooperation generally are not so coercive as to make a confession involuntary), cert. denied 2017 WL 69193 (2017); United States v. Alvarez, 142 F.3d 1243, 1248-49 (10th Cir. 1998) (holding that an officers stated intention to recommend a lesser sentence in exchange for defendant’s response to questions did not constitute a promise of a lesser sentence so as to make defendants statements involuntary).
The dissent argues that we haven’t applied each of the factors a court must consider when determining whether a statement was voluntarily made. To be sure, we haven’t discussed each of them separately, though we have noted that Guein is a college-educated man, and we have not suggested he failed to hear or understand the words used by Officer Weber. But the list of factors itself is a nonexclusive list; the court must consider all of the circumstances. We have carefully done that, and we have explained in our opinion the circumstances that led us to conclude that Guein’s post-Miranda statements were not made voluntarily.
The dissent also raises an additional argument dre State did not—tlrat Guein did not make the claim on appeal that his statements were improperly coerced by a threat of physical harm. We would first note that Guein specifically testified in die district court tiiat he feared physical harm from Officer Weber:
“Q. And did you think that there was consequences—what did you think when he used the cuss word ‘F around,’ what did you think he was saying would happen or what could happen if you didn’t tell him what he thought was going on there?
*414 “A. I thought there was going to be harm caused to me.
“Q. And what land of harm?
“A. Physical harm.”
We haven’t dwelt on Guein’s testimony about his subjective impressions since our decision is based on the meaning anyone in his situation would place on the words Weber used. But Guein’s attorney surely argued to the district court that the post-Miranda statements should be suppressed because threats were made by Weber:
“[Y]our Honor, I think the most important evidence that should be suppressed is from the . . . post-Miranda admissions. I think it’s veiy clear[] that it was an intentional threat made by the officer [and] that it was designed to make it more likely that he wouldn’t pay any attention to the advising of the rights that he would be given.”
And on appeal, Guein’s attorney again has argued that Guein’s statements were coerced by threats:
“Marcus could only speculate as to how severely tire officer would ‘fuck with’ him if he did not comply with the officer’s demands. In any case, the answer to this issue should not require an analysis into Marcus’ subjective belief as to just how far the officer would go with his threats to ‘fuck with’ Marcus. It is enough that die officer made the threat, ‘Don’t fuck around with me, and I ain’t going to fuck around with you, okay?’
“Officer Weber’s statements blur the line between promise and threat, but, however they are classified, were certainly intended to elicit an incriminating response!.]
[[Image here]]
“At the time Marcus heard these threats he was bound by handcuffs and on the way to die back of a law enforcement SUV headed for jail to be booked.”
In sum, Guein has adequately raised and argued the claim that his statements were coerced by threats, and we have concluded that his argument was well taken.
Having determined that Guein’s post-Miranda statements should not have been admitted at trial, we must still consider whether the error was harmless: “[E]ven an error that infringes upon a constitutional right may be declared harmless if the Senefitting party proves beyond a reasonable doubt that the error did not affect the outcome of the trial in fight of the entire record.” Garcia, 297 Kan. at 197. The State notes that there was other evidence that Guein had planned to pass or sell marijuana to someone else, qualifying *415 as distribution under Kansas criminal law. See K.S.A. 2015 Supp. 21-5705(d)(2)(A). But the State has not included the trial transcript in the record on appeal. Without it, we are not able to fairly judge how important Guein’s statements were in convicting him of distribution and, thus, whether this error was harmless. Even with respect to Guein’s conviction for possession of drug paraphernalia, which may well have been proved with overwhelming evidence, we can’t tell what evidence was used to show that Guein possessed the items in the absence of the trial transcript. Accordingly, we must set aside Guein’s convictions and order a new trial.
The district courts judgment is reversed, and the case is remanded to the district court for further proceedings.
[[Image here]]