NOT DESIGNATED FOR PUBLICATION

No. 115,753

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

BRIAN MICHAEL MARTIN,
*Appellant*.

MEMORANDUM OPINION

Appeal from Johnson District Court; JAMES CHARLES DROEGE, judge. Opinion filed October 27, 2017. Reversed.

*Peter Maharry*, of Kansas Appellate Defender Office, for appellant.

*Shawn E. Minihan*, assistant district attorney, *Stephen M. Howe*, district attorney, and *Derek Schmidt*, attorney general, for appellee.

Before ARNOLD-BURGER, C.J., PIERRON and GREEN, JJ.

PIERRON, J.:  Brian Michael Martin was charged with possession with intent to distribute oxycodone, possession with intent to distribute alprazolam, possession of marijuana, and possession of drug paraphernalia for baggies and/or scales. Martin pled guilty to possession of marijuana, and a jury convicted Martin on the remaining counts. Martin appeals, arguing the district court erred in denying his motion to suppress. He also contends the district court erred in admitting evidence of other drug offenses at trial and failing to give a limiting instruction. We reverse.

1

Around 12:40 a.m. on November 16, 2012, Corporal Ryan Sumner of the Lenexa Police Department saw Martin make a wide right turn. As he followed Martin, Sumner noticed Martin's license plate light was not working. Sumner said Martin was very still in his seat when Sumner drove up behind him. Martin then looked in his rearview mirror and became fidgety, frequently moving to his right.

After Sumner stopped Martin, he approached Martin's truck on the passenger side for safety reasons. Sumner said Martin had one hand between his legs but soon placed his hand somewhere Sumner could see it. Martin then leaned over and rolled down the window, and Sumner noticed the smell of burnt marijuana.

Sumner called for a second officer to come to the scene. He was nervous because Martin had been very fidgety and he could smell the odor of marijuana coming from inside the truck. Sumner asked for Martin's driver's license and insurance. Sumner made small talk as he waited for the backup officer to arrive. Sumner said he did not want to leave the window because he did not want to take his eyes off of Martin.

Sumner asked Martin where he was going, and Martin said he was going to a friend's house. Sumner later asked where the friend lived, and Martin replied, "He lives over in Kansas City, Kansas. Actually, I think it's actually Johnson County still, maybe." Sumner asked why Martin was taking this particular route, and Martin explained he did not want to take the highway because of an issue with his truck.

Sumner asked if Martin had any weapons in the truck. Martin said he had some knives, and produced a Leatherman multi-tool. Sumner asked Martin to place it on the dashboard.

After the backup officer arrived, Sumner asked Martin to get out of the truck. Sumner asked again if Martin had any weapons, and Martin said he had a small knife in

his pocket. At this point on the video of the stop, Martin placed his hands on the outside of his pants. Sumner told Martin he did not want Martin to place his hands in his pockets. Martin then lifted both hands and placed them on the side of the truck with his back to Sumner without any verbal command or request from Sumner to do so. Sumner asked Martin if he could search his pockets. Martin did not immediately respond, so Sumner asked again and Martin said yes. There is no audio of Martin's response to Sumner's question.

Sumner placed Martin's hands behind his back in order to better control him during the search. Sumner told Martin he was not under arrest in case Martin mistakenly thought Sumner was attempting to put him in handcuffs. Sumner stated, however, that Martin was not free to leave.

Sumner testified he searched Martin for weapons at that time. During the search, Sumner asked Martin when he had last smoked marijuana. Martin admitted he had smoked earlier that night in the truck outside his home. Sumner asked if there was any marijuana in the truck, and Martin said he did not know of any.

Sumner reached into the front breast pocket of Martin's jacket even though he had not felt a weapon. In the pocket, he found a small Ziploc bag with two pills inside. He recognized one of the pills as 80 milligrams of Oxycontin. Sumner also described the bag as having panthers printed all over the front. Sumner asked if the pills belonged to Martin. Martin said both the jacket and the pills belonged to Doug Fitzgerald, the common-law husband of his mother, Allene Martin, and Fitzgerald would verify that.

After Sumner finished patting Martin down, he walked Martin behind the truck to where the backup officer was standing. As Sumner was walking back towards the truck, Martin admitted there was marijuana in the truck. Sumner searched the truck and found a blunt and an Altoids can with marijuana residue inside. Sumner read Martin his *Miranda*

3

rights. Sumner asked Martin about the pills again because he believed Martin might be selling them. Martin again said the pills belonged to Fitzgerald.

Sumner placed Martin in his patrol car and took him back to the police station. Sumner told Martin that if he cooperated, his charges might be reduced or dropped. Sumner said, however, that he could not make any promises. Martin agreed to cooperate, and he provided Sumner with information regarding other people selling drugs.

Sumner then asked Martin if he had anything illegal in his home, and Martin said he did. At the time, Martin was living in the basement of his mother's home in Olathe. Sumner asked if he could search the room where Martin was staying, and Martin said he could. Sumner went with Martin and another officer to Martin's home. Sumner could not remember if he contacted the Olathe Police Department before going to Martin's home.

Sumner searched Martin's room and the garage. Martin showed the officer five bags of needles in the garage, which they recovered. Sumner also recovered a black tray with marijuana residue, a marijuana pipe, 22 small Ziploc bags identical to the one Sumner found in Martin's pocket, 24 small clear Ziploc bags, and two digital scales. Sumner found the items in a maroon bag.

During the search, Allene Martin, Martin's mother, confirmed that Fitzgerald had a prescription for Oxycontin as well as 13 other medications. She also confirmed that Martin was wearing Fitzgerald's jacket that night. She offered to show the officers the pill bottles, but they told her it was not necessary. The officers did not wake up Fitzgerald or interview him. Allene said he would be difficult to wake due to the medication he was taking.

4

The officers did not take Martin into custody after the search of his home. They released Martin on the condition that he would cooperate with narcotics detectives. To Sumner's knowledge, however, Martin never worked as a confidential informant.

The State eventually charged Martin with possession of oxycodone with intent to distribute, a severity level 4 drug felony; possession of alprazolam with intent to distribute, a severity level 4 drug felony; possession of marijuana, a class A nonperson misdemeanor; and possession of drug paraphernalia for the baggies and/or the scales, a severity level 5 drug felony.

Martin filed a motion to suppress all the evidence from the traffic stop and the search of his home. He argued the traffic stop and subsequent searches violated the Fourth Amendment of the United States Constitution and § 15 of the Kansas Constitution. After an evidentiary hearing, the district court found all evidence admissible except for information Sumner had obtained from Martin's cell phone. The court found Sumner had witnessed a traffic violation supporting the initial stop, and the odor of marijuana coming from the truck provided probable cause for the search of Martin and the truck. Finally, the court held that the Lenexa police officers were not acting outside their jurisdiction because "Officer Sumner can act like any private citizen could in visiting the Martin home."

Prior to the start of trial, Martin pled guilty to possession of marijuana. He contemporaneously objected to the admission of evidence obtained during the search of his person and his home.

Sumner testified at trial that in his experience the type of bag he found on Martin was often used for selling illegal narcotics. He stated that during the interview at the station, Martin admitted he had gotten the pills from Fitzgerald, and he was taking them

to his friend, Mark. Sumner stated Martin said he was not selling the pills but giving them away for free. Martin said he had more of the small Ziploc bags back at his house and a spoon with methamphetamine residue. Sumner testified one of the scales recovered from Martin's home had a white residue on it indicative of methamphetamine.

Bob Minor, a forensic scientist at the Johnson County Sheriff's Crime Lab, identified one of the pills as oxycodone. He identified the other pill as alprazolam. He testified the items recovered from Martin's truck and home were marijuana.

Allene testified Fitzgerald was disabled due to problems with his spine, and he had been on multiple prescriptions for several years. She said sometimes Fitzgerald would be in excruciating pain, so he always carried a couple of pills with him in case he could not get back home in time to take his medication.

Allene testified that Martin had recently moved back from Arizona and had little warm clothing. Because of this, he sometimes borrowed Fitzgerald's clothing. On November 16, 2012, Martin had borrowed one of Fitzgerald's jackets.

Fitzgerald testified that his spine was collapsing, and he took multiple medications a day for his condition. In November of 2012, he was prescribed both Oxycontin and alprazolam. He said he occasionally carried his medications in the pockets of his clothing, and sometimes placed them in small plastic bags for protection. He verified that Martin sometimes borrowed his clothing, including the jacket Martin had been wearing on November 16, 2012. Fitzgerald had written an affidavit providing all this information and gave it to Martin.

The jury convicted Martin on all counts. The district court made border box findings and sentenced Martin to 18 months' probation with an underlying sentence of 56 months' imprisonment. Martin appeals.

6

On appeal, Martin argues the district court erred in denying his motion to suppress. He contends the odor of marijuana alone is insufficient to support probable cause to search a person. He also asserts he did not voluntarily consent to the search of his person during the traffic stop. The State counters that the odor of marijuana alone should be sufficient to support probable cause. Alternatively, the State argues Martin consented to the search.

When reviewing a district court's ruling on a motion to suppress evidence, the factual underpinnings of that decision are reviewed for substantial competent evidence and the ultimate legal conclusion is reviewed de novo. *State v. Cleverly*, 305 Kan. 598, 604, 385 P.3d 512 (2016). When the district court denies a motion to suppress, the moving party must object to the introduction of that evidence at the time it is offered at trial to preserve the issue for appeal. *State v. Richard*, 300 Kan. 715, 726, 333 P.3d 179 (2014). Martin contemporaneously objected to the admission of evidence obtained during the search of his person and his home.

The Fourth Amendment to the United States Constitution and § 15 of the Kansas Constitution protect against unreasonable searches and seizures. A warrantless search is per se unreasonable unless it falls within one of the exceptions to the search warrant requirement recognized in Kansas. *State v. Neighbors*, 299 Kan. 234, 239, 328 P.3d 1081 (2014). One exception to the warrant requirement is stop and frisk. *Terry v. Ohio*, 392 U.S. 1, 88 S. Ct. 1868, 20 L. Ed. 2d 889 (1968). The State bears the burden of demonstrating that a warrantless search was lawful. *Cleverly*, 305 Kan. at 605.

In a stop and frisk, an officer who has reasonable suspicion that a subject is armed and dangerous may conduct a limited search of the suspect's outer clothing to determine whether the suspect has weapons. *State v. Spagnola*, 295 Kan. 1098, 1106, 289 P.3d 68 (2012) (citing *Terry*, 392 U.S. 1). An officer is limited to the least intrusive means

7

available to confirm or dispel his or her suspicion. *Spagnola*, 295 Kan. at 1107. While Sumner had reasonable suspicion to believe Martin might be carrying weapons, the pocket search exceeded the scope of the stop and frisk because it was not the least intrusive means by which Sumner could have confirmed or dispelled his suspicions. See 295 Kan. at 1107 (finding a pocket search exceeded the permissible scope of a stop and frisk). Thus, there must be another exception to the warrant requirement to support the expanded scope of the search.

Probable cause plus exigent circumstances is another exception which could possibly support Sumner's search of Martin's person. *State v. Stevenson*, 299 Kan. 53, 58, 321 P.3d 754 (2014). Probable cause means "the totality of the circumstances indicates there is a fair probability that the place to be searched contains contraband or evidence of a crime." *State v. Sanchez-Laredo*, 294 Kan. 50, Syl. ¶ 2, 272 P.3d 34 (2012). "Exigent circumstances exist where the law enforcement officer reasonably believes there is a threat of imminent loss, destruction, removal, or concealment of evidence or contraband." 294 Kan. 50, Syl. ¶ 3.

In this case, Sumner did not have probable cause to search Martin's person. While Kansas courts recognize a plain view or plain feel exception to the warrant requirement, they have not adopted a "plain smell" exception. *State v. Williams*, No. 114,140, 2016 WL 7178288, at *3 (Kan. App. 2016) (unpublished opinion). The Kansas Supreme Court has held that the odor of marijuana alone can provide probable cause to search a motor vehicle. *State v. MacDonald*, 253 Kan. 320, 325, 856 P.2d 116 (1993). Nevertheless, "[n]o Kansas case has applied the same rule to the search of a person." *State v. Guein*, 53 Kan. App. 2d 394, 408, 388 P.3d 194 (2017).

In *State v. Smith*, No. 103,736, 2011 WL 4563077, at *3-4 (Kan. App. 2011) (unpublished opinion), the court held that the odor of marijuana was insufficient to establish probable cause to search a person. The *Smith* court found that the odor of

marijuana emanating from the defendant, the odor of perfume as a possible masking agent, $370 in cash, and the defendant's nervousness did not provide probable cause for a warrantless search of the defendant's person. The court first concluded the cash, the odor of perfume, and the defendant's nervousness did not support a finding of probable cause. 2011 WL 4563077, at *4. As for the odor of marijuana, the court found, "Unless Kansas adopts a 'plain smell' exception to the warrant requirement, the odor of raw marijuana alone does not amount to probable cause." 2011 WL 4563077, at *4.

The State urges us to recognize that the odor of marijuana alone is sufficient to support probable cause to search a person. In support of its argument, it cites to a number of other jurisdictions that recognize the odor of marijuana emanating from a person as sufficient to support probable cause to search or arrest that person. See, e.g., *United States v. Humphries*, 372 F.3d 653, 658 (4th Cir. 2004) (recognizing that "odor of marijuana alone can provide probable cause to believe that marijuana is present in a particular place"); *State v. T.T.*, 594 So. 2d 839, 840 (Fla. Dist. Ct. App. 1992) (holding odor of marijuana emanating from a person sufficient to establish probable cause to search person); *State v. Yates*, 162 N.C. App. 118, 122-23, 589 S.E.2d 902 (2004) (same); *State v. Moore*, 90 Ohio St. 3d 47, 50, 734 N.E.2d 804 (2000) (same); *State v. Cross*, 23 Or. App. 536, 539, 543 P.2d 48 (1975) (same).

These cases are not binding on this court because of *Williams* and *Guein*.

Even if we were to adopt the precedent in these cases, however, it would not help the State's case. As the State acknowledges, Sumner never testified he smelled the odor of marijuana coming from Martin's person. Rather, he testified he smelled the odor of burnt marijuana coming from Martin's truck. The State only cites to one jurisdiction that has held the odor of marijuana in a vehicle is sufficient to support probable cause to search a person. *Adams v. State*, 815 So. 2d 578, 581-82 (Ala. 2001).

9

One of the State's own sources disavows the notion that the odor of marijuana in a vehicle provides probable cause to search a person. As the Fourth Circuit explained in *Humphries*,

"[w]hile the odor of marijuana provides probable cause to believe that marijuana is present, the presence of marijuana does not of itself authorize the police either to search any place or to arrest any person in the vicinity. Additional factors must be present to localize the presence of marijuana such that its placement will justify either the search or the arrest. In the case of a search, when the odor emanates from a confined location such as an automobile or an apartment, we have held that officers may draw the conclusion that marijuana is present in the automobile or the apartment. [Citations omitted.] But probable cause to believe that marijuana is located in an automobile or an apartment may not automatically constitute probable cause to arrest all persons in the automobile or apartment; some additional factors would generally have to be present, indicating to the officer that those persons possessed the contraband. [Citations omitted.]" 372 F.3d at 659.

The State contends this factual difference should not control the outcome in this case. It argues that the odor of marijuana emanating from the truck was sufficient to support probable cause because Martin was the only occupant of the truck. Nonetheless, the standard of probable cause requires a fair probability that a particular place contains contraband. Even if Martin was the only occupant of the truck, the circumstances still would indicate the marijuana was in the truck, not on Martin.

The State also asserts that other factors supported probable cause to search Martin. It notes Sumner testified that (1) Martin was fidgeting in his car before the stop, (2) he provided answers about his traveling destination that did not make sense to Sumner, and (3) he possessed a Leatherman and a small knife but did not admit to having the small knife until he was asked to get out of his truck. Even assuming these factors would lead a reasonable person to believe Martin possessed marijuana, the State does not explain how

10

these factors would lead someone to reasonably believe Martin was concealing marijuana on his person rather than in his truck.

It may not be necessary to decide the probable cause issue, though, because probable cause alone is insufficient to justify a warrantless search. Exigent circumstances must also exist. *Stevenson*, 299 Kan. at 58. At the district court level, the State did not allege that exigent circumstances supported the warrantless search of Martin's person. Rather, the State argued that Martin consented to the search. At the appellate level, the State has also not argued exigent circumstances existed; thus, any argument regarding exigent circumstances has been abandoned. *State v. Williams*, 303 Kan. 750, 758, 368 P.3d 1065 (2016) (an issue not briefed by the appellant is deemed waived or abandoned).

Additionally, the district court did not make any fact-findings or legal conclusions regarding exigent circumstances for us to review. Of course, we may presume the district court made all findings and conclusions necessary to support its decision if no objection was made. *Dragon v. Vanguard Industries, Inc.*, 282 Kan. 349, 358, 144 P.3d 1279 (2006). Even if we were to presume the district court made findings regarding exigent circumstances, however, these findings would not be supported by substantial competent evidence. The State did not present any testimony from Sumner regarding any reasonable belief of a threat that evidence would be lost or destroyed. See *Williams*, 2016 WL 7178288, at *4 (finding district court's conclusion that exigent circumstances existed was not supported by evidence presented at suppression hearing). In fact, Sumner testified that at the time of the search he was looking for weapons not marijuana or contraband.

The State may be trying to circumvent this problem by arguing that the search was reasonable because Sumner chose the least intrusive means of verifying or dispelling his suspicion. In support of its argument, the State cites to a Fifth Circuit case, *United States v. Johnson*, 862 F.2d 1135, 1138 (5th Cir. 1988), which held, "Where officers face no clear answer regarding which of two courses of conduct represents a greater intrusion on

citizens' privacy, the Fourth Amendment generally leaves the choice between those alternatives to the discretion of law enforcement officials." In *Johnson*, police officers had probable cause to believe two bus passengers were carrying drugs in their luggage. Officers had the choice between searching the luggage of the passengers in private without a warrant as the passengers awaited the departure of their bus or publicly arresting the passengers, which would have been difficult and possibly dangerous. The officers chose to search the luggage, and the Fifth Circuit upheld the search as constitutional.

The State argues that similar to the officers in *Johnson*, Sumner was faced with the choice of searching Martin's person or arresting Martin. *Johnson*, however, is factually distinguishable from Martin's case. In *Johnson*, the officers had to decide between searching private property and detaining bus passengers before their pending departure. Here, Sumner searched Martin's person, not his property. Additionally, Sumner had already detained Martin at the time of the search. Finally, *Johnson* is a federal case from the Fifth Circuit. It presents only persuasive authority and is not binding on this court.

As an alternative, the State argues the evidence is admissible under the inevitable discovery doctrine. The inevitable discovery doctrine is an exception to the exclusionary rule which allows a district court to admit evidence discovered as the result of an unconstitutional search if the evidence would have eventually been discovered in a legal manner. *State v. Baker*, 306 Kan. 585, 590, 395 P.3d 422 (2017). The State contends even without the initial search of Martin's person, Sumner would have searched the truck and found the marijuana. Sumner would have then arrested Martin for possession of marijuana and found the pills on Martin during a search incident to arrest.

This argument was not raised before the district court, and the State has not explained why this argument should be heard for the first time on appeal. Generally, we do not hear arguments for the first time on appeal unless the party raising the argument

12

explains why we should. See *State v. Godfrey*, 301 Kan. 1041, 1044, 350 P.3d 1068 (2015).

Martin argues in a reply brief that Sumner could not have legally arrested him for misdemeanor possession of marijuana without a warrant under K.S.A. 22-2401 given the circumstances in this case. There is some precedent for Martin's argument. In *State v. Schur*, 217 Kan. 741, Syl. ¶ 6, 538 P.2d 689 (1975), the Kansas Supreme Court held the search incident to arrest exception did not justify the warrantless search of the defendant's apartment because the defendant could not have been lawfully arrested for misdemeanor possession of marijuana under an older but substantially similar version of K.S.A. 22-2401. Nevertheless, because this issue was not raised below, the State did not present any evidence regarding the applicability of K.S.A. 22-2401, nor did the district court make any findings regarding this argument. See *State v. Cockrell*, No. 114,132, 2016 WL 3960449, at *5-6 (Kan. App. 2016) (unpublished opinion). Therefore, inevitable discovery cannot be argued by the State.

Another exception to the search warrant requirement is consent. To establish valid consent, the State must prove (1) clear and positive testimony that consent was unequivocal, specific, and freely given; and (2) the absence of duress or coercion, express or implied. *Cleverly*, 305 Kan. at 613. Whether consent was voluntary is an issue of fact which appellate courts review to determine if substantial competent evidence supports the district court's findings. *State v. James*, 301 Kan. 898, 909, 349 P.3d 457 (2015). If the parties do not dispute the material facts, the suppression issue is solely a question of law. *Spagnola*, 295 Kan. at 1104.

Here, the district court found probable cause supported Sumner's search of Martin and Martin's truck. It did not make any findings regarding Martin's consent to the search. Furthermore, it is clear from the record that Martin's consent to the search was not voluntary.

13

In support of its argument that he did not consent, Martin directs us to *Spagnola*, 295 Kan. at 1100-01, in which the Kansas Supreme Court unanimously held that a defendant's consent to let an officer search his pockets during a pat-down was not voluntary. In that case,

"Officer Aaron Jones of the Topeka Police Department observed a car drive through an intersection without stopping for a stop sign. Jones activated the lights of his patrol car and signaled the car to pull over to the side of the road. As the car pulled over, it rolled onto the curb and into a grassy area next to the curb and then back off of the curb before coming to a complete stop. Jones saw the driver reach down toward his right side as he pulled over, as if reaching into a pocket or the car console. Jones walked over to the car, and Spagnola, who was driving, presented his driver's license.

"Jones returned to his patrol car and, concerned that Spagnola might be armed, requested backup assistance. After the backup officer arrived, Jones returned to Spagnola's car and asked him to step out of the car. As Spagnola was getting out of the car, Jones asked him whether he had anything illegal in his possession. Spagnola replied that he was working on a computer monitor for a friend and he thought the monitor might have been stolen. Jones saw a small clip-on knife protruding from one of Spagnola's pant pockets, and he removed the knife and then asked him whether he had anything illegal on his person. Spagnola said, 'Other than a knife, no.' Jones informed him that the knife was not illegal and inquired about drugs, knives, guns, needles, 'or anything like that.'

"After Spagnola said that he did not have any illegal items on his person, Jones asked, 'Is it okay if I search your pockets?' Spagnola said, yes. Jones then asked Spagnola to turn around, place his hands behind his back, and interlace his fingers. Jones again asked for permission to search his pockets, and Spagnola again consented." 295 Kan. at 1100-01.

During the search of Spagnola, Jones found two bags of methamphetamine. Spagnola filed a motion to suppress, but the district court denied it. The district court later convicted Spagnola of possession of methamphetamine at a bench trial.

14

On review, the *Spagnola* court held that the traffic stop was valid, and Jones had reasonable suspicion to extend the stop. 295 Kan. at 1104-05. The court found, however, that the search impermissibly exceeded the scope of the stop and frisk exception. 295 Kan. at 1105-06. Finally, the court held that Spagnola's consent to the search was not voluntary:

> "Spagnola was standing outside of his car in the presence of more than one police officer, one of whom had arrived as backup support. When Spagnola gave his second permission for the search, he was standing with his back to the officers, with his hands behind his back and his fingers interlaced. This was not a posture or an environment in which it can be said that consent was voluntarily given free from coercion." 295 Kan. at 1108.

This case is factually very similar to *Spagnola*. Martin consented to a search while outside his car, in the presence of more than one officer, the second of which arrived as backup. See *Spagnola*, 295 Kan. at 1108 (noting "the presence of more than one police officer may strongly suggest 'a coercive atmosphere'"). The video of the stop shows at least one officer had his lights activated at the time of the search. Martin had his hands on his truck with his back to Sumner when Sumner requested permission to search Martin's pockets.

Because none of these facts are in dispute, we conclude as a matter of law that Martin did not consent to the search. See, e.g., *State v. Burton*, 37 Kan. App. 2d 916, 923, 159 P.3d 209 (2007).

Next, Martin argues the Lenexa police officers did not have jurisdiction to search his Olathe residence under K.S.A. 2016 Supp. 22-2401a. He argues when the Lenexa officers searched his home they were exercising their police powers outside of their jurisdictional authority. He asserts the evidence recovered from his home should be suppressed. The State responds the Lenexa officers were not in violation of K.S.A. 2016

Supp. 22-2401a because they were not exercising their police powers. It also contends the exclusionary rule is not appropriate in this case.

K.S.A. 2016 Supp. 22-2401a controls the territory in which a city law enforcement officer may exercise his or her police powers. The statute states, in relevant part:

"(2) Law enforcement officers employed by any city may exercise their powers as law enforcement officers:
(a) Anywhere within the city limits of the city employing them and outside of such city when on property owned or under the control of such city; and
(b) in any other place when a request for assistance has been made by law enforcement officers from that place or when in fresh pursuit of a person."

Within Sedgwick County or Johnson County, city law enforcement officers may execute valid arrest or search warrants within county limits. K.S.A. 2016 Supp. 22-2401a(5). In Johnson County, city law enforcement officers may also exercise their police powers in any adjoining city within county limits after viewing the commission of a crime. K.S.A. 2016 Supp. 22-2401a(7).

Here, the district court found the Lenexa officers were not in fresh pursuit and the Olathe Police Department had not requested their assistance. The court held, however, that the Lenexa officers did not violate K.S.A. 2016 Supp. 22-2401a because they were not exercising their police powers when they searched Martin's Olathe residence. The court stated,

"Officer Sumner can act like any private citizen could in visiting the Martin home. An officer in this context could engage in a voluntary knock and talk, and this is pretty much what we had here. [There] was no objection to the search of the Martin residence in this case."

16

The record supports the district court's findings that the exceptions listed under K.S.A. 2016 Supp. 22-2401a(2) did not grant the Lenexa officers the authority to exercise their police powers in Olathe. The district court did not make any specific findings under subsections (5) and (7). As Martin argues, however, the record does not indicate that either of these subsections applied.

This does not necessarily mean the Lenexa officers were acting without authority under K.S.A. 2016 Supp. 22-2401a. The statute only constrains the exercise of police powers. *State v. Vrabel*, 301 Kan. 797, 802, 347 P.3d 201 (2015).  Therefore, a law enforcement officer may act as a private citizen could in another jurisdiction. See *State v. Miller*, 257 Kan. 844, 851, 896 P.2d 1069 (1995) (finding an officer acting outside the scope of his or her powers under K.S.A. 22-2401a may still make a citizen's arrest).

Here, however, the Lenexa officers were not acting as private citizens. First, they likely secured Martin's cooperation and agreement to a search through the influence of their position as law enforcement. See *State v. Robinson*, 303 Kan. 11, 119-20, 363 P.3d 875 (2015), *cert. denied* 137 S. Ct. 164 (2016), *disapproved of on other grounds by State v. Cheever*, 304 Kan. 866, 375 P.3d 979 (2016) (finding officers were exercising their police powers when they used their position as law enforcement to secure cooperation of private trash collector for trash pulls). It is unlikely that someone would agree to allow a private citizen to search their home for contraband. Second, Sumner recovered marijuana and drug paraphernalia from Martin's home. Private citizens cannot lawfully possess contraband, even if their intent is to turn it over to law enforcement. See, e.g., *Vrabel*, 301 Kan. at 803 (noting a confidential informant cannot legally possess contraband to give to police officers unless acting as an agent of law enforcement); *State v. Calvert*, 27 Kan. App. 2d 390, Syl. ¶ 1, 5 P.3d 537 (2000) (holding Kansas does not recognize innocent possession as a justification for possession of contraband). Therefore, the district court erred in finding the Lenexa officers were not in violation of K.S.A. 2016 Supp. 22-2401a because they were acting as private citizens.

17

On appeal, Martin argues that not only was the search unlawful under K.S.A. 2016 Supp. 22-2401a, it also violated his federal and state constitutional rights against unreasonable searches and seizures. He contends his consent to the search was coerced because Sumner told him his charges could be reduced or dropped in exchange for cooperation.

The record indicates Martin's consent to the search of his home was not voluntary. At the scene of the traffic stop there was coercion which led to incriminating statements, the seizure of drugs, and a coerced consent to search his home.

As indicated above, the smell of marijuana under these facts did not provide probable cause. There was no justification for searching Martin's breast pocket as there obviously were no weapons there. There were two officers at the scene, the officers had to repeat requests to get Martin to comply, and because it was not raised below by the State, the inevitable discovery exception is not applicable.

Therefore, Martin's subsequent statement and consent were coerced and cannot be used against him.

Because of this finding, we need not deal with Martin's other points on appeal.

Reversed.